**SECURITIES AND EXCHANGE COMMISSION**

v.

**MORGAN, LEWIS & BOCKIUS et al.**
**No. 11124.**

United States Court of Appeals
Third Circuit.

Argued Nov. 2, 1953.

Decided Dec. 23, 1953.

Thomas B. K. Ringe, Philadelphia, Pa. (Wm. Clarke Mason, J. Wesley Oler, Philadelphia, Pa., on the brief), for appellants.

Alexander Cohen, Washington, D. C. (Roger S. Foster, General Counsel, Washington, D. C., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal from a summary judgment entered by the United States District Court for the Eastern District of Pennsylvania directing the defendants to file with the Securities and Exchange Commission informational statements pursuant to Section 12(i) of the Public Utility Holding Company Act of 1935,[1] and Rule U–71 [2] of the Securities and Exchange Commission. The question for determination is whether that section encompasses lawyers who represent a registered public utility holding company in matters pending before the Commission. The defendants are members of the law firm of Morgan, Lewis & Bockius of Philadelphia. The integrity of the defendants is unquestioned and there is not the slightest suggestion that the issues which they raise are not raised in perfect good faith. Indeed the defendants make it clear that they are willing to furnish the Commission with all pertinent and relevant information to which it is legally entitled.

As grounds for their contention that the district court erred in requiring them to file the statements in question the defendants assert (1) that Congress intended Section 12(i) to apply only to those engaged in lobbying activities and not to lawyers who appear solely with respect to legal matters, (2) that Section 12(i) was repealed by the Federal Regulation of Lobbying Act of 1946 [3] and the Administrative Procedure Act,[4] (3) that Section 12(i) is unconstitutionally discriminatory and vague, and (4) that

1. 15 U.S.C.A. § 79l(i).

2. General Rules and Regulations, § 250.-71, 6 FR 2026, 5950, 17 CFR, 1949 ed., § 250.71.

3. 2 U.S.C.A. § 261 et seq.

4. 5 U.S.C.A. § 1001 et seq.

the Commission had lost its power to enforce Rule U–71 against them by acquiescing in their continued failure to file a statement. These contentions were all fully considered by the district court which in a well reasoned opinion filed by Judge Grim found them to be without merit. D.C., 113 F.Supp. 86. We are wholly in accord with the views thus expressed.

The fact is that during the periods of time in question the defendants appeared before the Commission as counsel for the United Gas Improvement Company, a registered holding company, in corporate integration and simplification proceedings brought by the Commission under Section 11 of the Act. Their appearances involved the customary services of lawyers for a client and did not include the type of legislative advocacy which is colloquially called "lobbying". During this time the defendants did not file the statements called for by Section 12(i) because of their belief that it was the intent of Congress by that section to regulate only such lobbying and that the Act did not apply to lawyers practicing before the Commission on behalf of clients who were parties in interest in pending matters.

Section 12(i) of the Public Utility Holding Company Act provides:

"It shall be unlawful for any person employed or retained by any registered holding company, or any subsidiary company thereof, to present, advocate, or oppose any matter affecting any registered holding company or any subsidiary company thereof, before the Congress or any Member or committee thereof, or before the Commission or Federal Power Commission, or any member, officer, or employee of either such Commission, unless such person shall file with the Commission in such form and detail and at such time as the Commission shall by rules and regulations or order prescribe as necessary or appropriate in the public interest or for the protection of investors or consumers, a statement of the subject matter in respect of which such person is retained or employed, the nature and character of such retainer or employment, and the amount of compensation received or to be received by such person, directly or indirectly, in connection therewith. It shall be the duty of every such person so employed or retained to file with the Commission within ten days after the close of each calendar month during such retainer or employment, in such form and detail as the Commission shall by rules and regulations or order prescribe as necessary or appropriate in the public interest or for the protection of investors or consumers, a statement of the expenses incurred and the compensation received by such person during such month in connection with such retainer or employment."

Rule U–71 was adopted by the Commission pursuant to Section 12(i) and prescribes the form and detail of the statements required. It is set out in full in the margin.[5]

5. "§ 250.71 *Statements to be filed pursuant to section 12(i) of the act*—(a) *Ten-day statement.* Any person who engages in any activity within the scope of section 12(i) of the act, shall file with the Commission within 10 days after the date of such activity a statement on Form U-12 (I)-A, except as to activity within the scope of any advance statement on Form U-12 (I)-B, which is duly filed in accordance with paragraph (b).

"(b) *Advance statement.* An advance statement, covering anticipated activity for the remainder of the calendar year, may be filed on Form U-12 (I)-B by any person (whether or not the compensation of such person has been fixed in advance) who is a salaried officer or employee or an attorney, accountant or other expert regularly retained by any company or by companies in the same holding company system, or any person specially retained in connection with a particular proceeding or enterprise which is expected to involve a series of appearances or activities, if such employment or retainer does

We agree with the district court that the language of Section 12(i) is so clear and unambiguous as to need no construction. The defendants admittedly presented matters affecting their client, a registered holding company, and its subsidiaries, before the Commission and its members, officers and employees. The plain language of the statute accordingly covered their activities and there is no need to go to the legislative history for further light. But if there were such need, reference to the legislative history would not help the defendants. For we have examined all of it and we see nothing in it which would call for narrowing the sweep of the statutory language. Undoubtedly Section 12(i) was directed at lobbying activities in connection with public utility holding companies. The legislative history makes that perfectly clear. It is equally clear, we think, that Congress in using in Section 12(i) the technique of disclosure as a deterrent to invidious lobbying activities in connection with such companies intended to draw no fine distinctions with respect to the various kinds of activities in which a lawyer might engage in representing his public utility holding company client. It was recognized that the line between normal representation of the legitimate interests and claims of a client and undesirable attempts to influence legislative or administrative action for the benefit of a client was difficult to draw in a statute. Moreover the two might be inextricably interwoven. Accordingly Congress intended to bring within its reporting requirements all those who were employed or retained to present, advocate or oppose any matter affecting such corporations before Congress or the Commissions and thus use the light of publicity to discourage those activities which were regarded as illegitimate.

The defendants urge that the 74th Congress which enacted the Public Utility Holding Company Act of 1935 indicated that it intended to deal only with lobbyists by Section 12(i) when it failed to enact either S. 2512 or H.R. 5725, two bills relating to lobbying pending in the same Congress, because it believed that through the enactment of Section 12(i) it had satisfactorily met the principal lobbying problem of the day. The difficulty with this contention is that the legislative history does not support it. For H.R. 5725 was succeeded by H.R. 11663, a revised bill on the same subject, which the House of Representatives passed on March 27, 1936.[6] When on April 4, 1936 this bill came up for consideration in the Senate that body amended it by striking out all after the enacting clause and inserting the text of S. 2512,[7] which the Senate had previously passed[8] and which the House of Representatives had not acted upon. H.R. 11663 as thus amended went to conference between the two Houses. The conference report, which represented a compromise between the Senate and House versions, was rejected by the House on June 17, 1936 which then proceeded to lay the Senate amendment on the table,[9] thus defeating the final enactment of the bill. There is nothing

not contemplate any expenses other than ordinary personal, traveling or sustenance expenses, stationery, postage, telephone and telegraphic service, stenographic and clerical assistance, expenditures for the printing of briefs or other documents to be submitted to any agencies specified in section 12(i) of the act (49 Stat. 823; 15 U.S.C. 791), and similar items.

"(c) *Supplemental statement.* Any person filing an advance statement on Form U-12 (I)-B shall file a supplement to such advance statement within 30 days after the end of the period covered thereby, and in no event later than January 30 of the following year, giving the information specified in Items 5 and 6 thereof. Any such person renewing such advance statement may combine the renewal and supplement in the same statement."

6. 80 Cong.Rec. 4541.

7. 80 Cong.Rec. 4970.

8. 79 Cong.Rec. 8306.

9. 80 Cong.Rec. 9752, 9753.

in this procedure or in the debates accompanying it to suggest that Congress thought that the lobbying problem had already been met. Indeed quite the contrary is true.

■ The defendants assert that Section 12(i) is unconstitutionally vague and discriminatory. We agree with the district court that there is no merit in these contentions. On the contrary we think that the statute is sufficiently definite in the standards of guilt which it lays down to meet the requirements of constitutional due process of law. National Association of Manufacturers v. McGrath, D.C.D.C., 1952, 103 F.Supp. 510, vacated as moot, 344 U.S. 804, 73 S.Ct. 313, upon which the defendants principally rely, is not in point since it dealt with the very different provisions of the Federal Regulation of Lobbying Act of 1946. That the language of the prohibition against persons employed or retained by a public utility holding company presenting, advocating or opposing matters affecting any such company or its subsidiaries before Congress, or its members or committees, or the Securities and Exchange Commission or Federal Power Commission, or their members, officers or employees is sufficiently certain to form a guide to those affected by it is evidenced by the unquestioned applicability of the language to the facts of this case.

Likewise we see no unconstitutional discrimination in Section 12(i). It is not directed primarily to lawyers but rather to all persons employed or retained by utility holding companies who engage in the activities to which the statute is directed. That lawyers who are engaged in some of these activities may be subjected to reporting requirements not generally attendant upon law

practice is incidental to the purposes of the Act and in the opinion of Congress was necessary to carry out those purposes.[10] In a certain sense it may be discriminatory but it is clearly not so arbitrary or injurious in character as to violate the due process clause of the Fifth Amendment. And as Chief Justice Stone pointed out in Detroit Bank v. United States, 1943, 317 U.S. 329, 337, 63 S.Ct. 297, 301, 87 L.Ed. 304, "Unlike the Fourteenth Amendment the Fifth contains no equal protection clause and it provides no guaranty against discriminatory legislation by Congress."

■ Defendants further contend that even if Section 12(i) were otherwise applicable it should be regarded as repealed by the Federal Regulation of Lobbying Act and Administrative Procedure Act. These contentions also were adequately considered by the district court. The defendants contend that the Federal Regulation of Lobbying Act occupies the entire field and, therefore, impliedly has repealed Section 12(i). It is well settled that a repeal will not be implied unless there be an irreconcilable conflict between the two statutes.[11] A reading of the two acts discloses that they do not occupy the same field, although it may well be that some of those persons required to file statements with the Commission under Section 12(i) of the Public Utility Holding Company Act would also be required to register with Congress under the Federal Regulation of Lobbying Act.

■ The defendants' contention that Section 12(i) is repealed by the Administrative Procedure Act is equally without merit. They contend that the unrestricted right to counsel accorded by Section 6(a) of the Administrative Procedure Act is inconsistent with Section

10. In North American Co. v. Securities and Exchange Commission, 1946, 327 U. S. 686, 710–711, 66 S.Ct. 785, 799, 90 L. Ed. 945, the Supreme Court said with respect to Section 11(b) (1) of this Act: "But if evils disclosed themselves which entitled Congress to legislate as it did,

Congress had power to legislate generally, unlimited by proof of the existence of the evils in each particular situation."

11. Petri v. F. E. Creelman Lumber Co., 1905, 199 U.S. 487, 497, 26 S.Ct. 133, 50 L.Ed. 281.

12(i). Section 6(a), however, merely states the fundamental right which a person has to the aid of counsel. It does not follow that the right of an interested person to the aid of counsel relieves counsel of any duties he may have under the law. On the contrary Section 12 of the Administrative Procedure Act expressly provides that "Nothing in this Act shall be held * * * to limit or repeal additional requirements imposed by statute or otherwise recognized by law." We see no repugnancy between the two statutes.

■ The defendants further argue that Rule U–71 prescribes qualifications for the practice of law and, therefore, was superseded by Rule II(b) of the Commission's Rules of Practice.[12] The district court adequately considered this contention also. Section 12(i) imposes the duty; Rule U–71 merely prescribes the form and detail. The requirement of the statement is imposed by the statute not by the rules of practice of the Commission.

■ The defendants' final contention is that the Commission waived enforcement of Rule U–71 because no further steps were taken by it from the time of the defendants' refusal to file in 1944 until 1952 when they were requested to file statements and these proceedings were instituted. This contention also was rightly rejected by the district court. The defendants refused to submit a statement in 1944; they assert no injury or loss as a result of the failure of the Commission immediately to enforce compliance. Moreover the Commission may not waive the requirement of an act of Congress nor may the doctrine of estoppel be invoked against the Commission.[13]

The judgment of the district court will be affirmed.

12. 1 FR 1753, 17 CFR § 201.2(b), amended September 11, 1946, 11 FR 177A–723, 17 CFR, 1949 ed., § 201.2(b).

13. U. S. v. City and County of San Francisco, 1940, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050; Spencer v. Railroad Retirement Board, 3 Cir., 1948, 166 F.2d 342.