The CENTRAL WEST UTILITY COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 12118.

United States Court of Appeals Third Circuit.

Argued May 10, 1957.

Decided Aug. 6, 1957.

Howard E. Wahrenbrock (Willard W. Gatchell, Washington, D. C., Gen. Counsel, Edwin M. Miller, Washington, D. C., on the brief), for respondent, Federal Power Commission.

Harry S. Littman (William E. Miller and Steptoe & Johnson, Washington, D. C., on the brief), for intervenor Panhandle Eastern Pipe Line Co.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

MARIS, Circuit Judge.

In this case the Central West Utility Company seeks review of an order of the Federal Power Commission issued June 30, 1956 insofar as it granted a certificate of public convenience and necessity to Panhandle Eastern Pipe Line Company without attaching to the issuance thereof a condition sought by Central West.

The basic background facts with respect to Panhandle's proposed expansion program are set out in our opinion in Michigan Consolidated Gas Company v. Federal Power Commission, 1957, 246 F.2d 904, in which we considered other parts of the order here under review. Suffice it to say that Panhandle and its affiliate, Trunkline Gas Company, natural-gas companies, filed several applications for certificates of public convenience and necessity under section 7(c) of the Natural Gas Act.[1] Among these was an application filed by Panhandle on May 18, 1954,[2] for authority to construct and operate facilities designed to increase its pipe line capacity. Included in the proposal described in this application was a plan to enlarge 10 of the 18 laterals on the Panhandle system and to deliver additional volumes of gas to the customers served by those laterals. It is with this phase of Panhandle's application that we are here concerned.

Dick H. Woods, Kansas City, Mo., (Lester G. Seacat, Jefferson City, Mo., Stinson, Mag, Thomson, McEvers and Fizzell, Kansas City, Mo., on the brief), for petitioner, Central West Utility Co.

Central West, a utility company engaged in the purchase and sale of natural gas in Clay County, Missouri, to the north of Kansas City, has been supplied since 1936 from a lateral on Panhandle's

1. 15 U.S.C.A. § 717f(c).

2. F.P.C. Docket No. G-2433.

system known as the Liberty lateral. Central West, which was granted leave to intervene in opposition in the certificate proceedings, claimed that for a long time past Panhandle had practiced unlawful discrimination in its service to certain of its utility customers served on the Liberty lateral as distinguished from the service provided, and proposed to be provided, to others of its utility customers being served from its other laterals, particularly those customers on the 10 laterals which Panhandle sought authority to enlarge. Central West asked that the certificate sought by Panhandle should not issue unless it was conditioned with the requirement that Panhandle deliver increased volumes of gas to Central West on the Liberty lateral.

On March 6, 1956, the presiding examiner filed his decision finding that the certificate of public convenience and necessity sought by Panhandle should be granted but that it should be conditioned on the elimination within 90 days of the discrimination in service practiced against Central West by providing the latter with service comparable to that of other Panhandle customers being served from laterals which Panhandle had voluntarily undertaken to improve and that Panhandle should afford Central West a contract demand of 12,000 Mcf of natural gas per day. On exceptions thereto filed by Panhandle these conclusions were rejected by the Commission in its Opinion No. 292 and accompanying order, issued June 30, 1956. 15 F.P.C. 46. An application for rehearing was filed by Central West upon

the denial of which this petition for review followed.[3]

This is the third time that this controversy between Central West and Panhandle has come before this court. In the first case to come before us[4] it appeared that Panhandle had contracted with 47 of its customers for gas deliveries aggregating approximately 39,000 Mcf per day less than its designed capacity. It refused to contract with Central West and three other customers, one of whom was also served from the Liberty lateral. Nonetheless these four customers filed contract demands with the Commission for a total of 275,000 Mcf of gas per day. The Commission found that these customers would be unduly prejudiced and unreasonably discriminated against in violation of section 4(b) of the Act[5] by the refusal of Panhandle to meet their reasonable requirements. Accordingly it put into force the 47 service agreements voluntarily entered into by Panhandle, continued in force the four prior contracts with the four customers, including Central West, which Panhandle had refused to negotiate, and ordered Panhandle to take appropriate steps to provide those four customers with maximum daily deliveries of 196,049 Mcf to which the Commission had found them to be entitled within 45 days of the issuance of its order.

Upon review sought by Panhandle this court set aside the Commission's order, holding that it was beyond the power of the Commission to order Panhandle to enlarge the facilities of the Liberty lateral and to direct it to deliver gas to

3. The petition for review was originally filed by Central West Utility Company in the Court of Appeals for the District of Columbia Circuit and was transferred by that court to this court on motion of the Federal Power Commission. This action was taken on the ground that this court had acquired exclusive jurisdiction of the order sought to be reviewed by virtue of the fact that the transcript of the record of the proceedings in which the order had been made had been filed by the Commission in this court in the review proceeding instituted by Michigan Consolidated Gas Company v. F. P. C., 3

Cir., 246 F.2d 904. Compare Columbia Oil & Gasoline Corp. v. Securities & Exch. Comm., 3 Cir., 1943, 134 F.2d 265; L. J. Marquis & Co. v. Securities & Exch. Comm., 2 Cir., 1943, 134 F.2d 335; L. J. Marquis & Co. v. Securities & Exch. Comm., 3 Cir., 1943, 134 F.2d 822; American Power & Light Co. v. Securities & Exchange Comm., 1945, 325 U.S. 385, 391, 65 S.Ct. 1254, 89 L.Ed. 1683.

4. Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 3 Cir., 1953, 204 F.2d 675.

5. 15 U.S.C.A. § 717c(b).

customers on that lateral in excess of the designed or existing capacity of the lateral, even though the purpose of the order was to eliminate discrimination between customers. On petition for rehearing we said that the Commission did have authority, if necessary or desirable in the public interest, to require Panhandle to restore the Liberty lateral to the capacity for which it was originally designed and approved or which it may have actually had in the past and that the Commission was free to reconsider the extent to which it might thus lawfully require Panhandle to improve, and thereby to increase the present capacity of, the Liberty lateral.[6]

The Commission thereafter considered this question and the matter came before us a second time upon a petition by Central West to review the Commission's opinion and order issued June 7, 1955, in which it found that there was no evidence that the designed or actual capacity of the Liberty lateral was ever greater than its present capacity. We affirmed this order.[7]

The Liberty lateral runs from a compressor station on Panhandle's main pipe line at Louisburg, Kansas, to a terminus near Liberty, Missouri. It had been built in 1928 and was acquired by Panhandle in 1936. It is a comparatively low pressure pipe line and the maximum volume of gas which Panhandle had been able to deliver through it on the peak day January 20, 1954 was about 25,475 Mcf,[8] of which about 5,249 Mcf was delivered to Central West. The combined resale requirements from that lateral were estimated to be 31,517 Mcf. Hence, the maximum performance of the Liberty lateral on that peak day was about 6,042 Mcf short of the estimated demand therefrom. The presiding examiner found

the total peak-day estimated requirements for utility customers on that lateral in the winter of 1955–1956 to be 38,290 Mcf, a deficiency of about 13,683 Mcf.

On January 8, 1954 Panhandle had addressed a letter to each of its utility customers served from the 10 laterals which it proposed to enlarge in which it solicited from them agreements for additional deliveries of gas commencing November 1, 1955. Under the proposed expansion, Panhandle would be able to deliver increased volumes of gas to these customers. Since 1951 Panhandle has refused to contract with Central West, however. Central West was willing, as of November 1, 1955, to contract for 12,000 Mcf, which is an excess of some 6,500 Mcf over its present authorized peak-day delivery, but no provision was made in Panhandle's application for the enlargement of the Liberty lateral so as to supply Central West's requirements. The proposal which Central West advances is that adequate service from the Liberty lateral could be provided by the construction of about 24 miles of new 10-inch pipe line interconnecting with Panhandle's main line near Harrisonville, Missouri, thereby increasing the capacity of the Liberty lateral by 22,189 Mcf per day at an estimated cost of $619,000. Panhandle proposed to spend approximately $4,474,896 on the enlargement program for the 10 other laterals.

Central West's position is that this case is materially distinguishable from the first case because here Panhandle has voluntarily sought a certificate of public convenience and necessity for its enlargement program. It contends that the Commission in order to enforce the mandate of section 4(b) of the Act,[9] that

---

6. 204 F.2d 675, 682.

7. Central West Utility Co. v. Federal Power Comm., 3 Cir., 1956, 236 F.2d 287.

8. Of this amount, Cities Service Co., under an exchange agreement with Panhandle, served 9,164 Mcf into this lateral at Louisburg and 16,311 Mcf was Panhandle gas.

9. "(b) No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in

there may not be any undue prejudice or advantage to any person, was required under section 7(e) of the Act[10] to attach a condition to the issuance of Panhandle's certificate requiring Panhandle to bear the cost of eliminating the discrimination it has practiced and proposes to continue to practice against Central West. The Commission rejected these contentions upon the authority of our opinion in the first case, Panhandle Eastern Pipe Line Co. v. Federal Power Com'n, 1953, 204 F.2d 675. In its opinion accompanying the order here under review the Commission said:

"We consider that the decision of the court in the Panhandle case cited above governs this case, and requires the reversal of the Examiner on this issue. The circumstances of that decision closely parallel the circumstances of the present case. Both involve the same companies, the same lateral, and the same claimed discrimination; and the requirement we imposed in the earlier case was, in language and effect, practically identical to the requirement which the Examiner would impose here. In the earlier case the court held that we have no authority to compel the enlargement of transportation facilities even though the purpose is to eliminate discrimination; and that this prohibition extends to an order which, although it does not in so many words require a company to enlarge its facilities, in effect compels it to do so. As

the court there said (204 F.2d at page 680):

'* * * it was beyond the power of the Commission to order Panhandle within 45 days to take steps to eliminate discrimination in the service between the customers on its Liberty lateral and those on its other laterals by enlarging the facilities of the Liberty lateral.'

This holding is dispositive of the issue in this proceeding respecting the imposition of a requirement that Panhandle enlarge its facilities on the Liberty Lateral. Such a requirement is 'beyond the power of the Commission.'

"Moreover, we consider that the Panhandle case cited above, and the instant one, are not materially distinguishable. In the instant case, it is true that the requirement would be imposed by a condition under Section 7(e) of the Natural Gas Act rather than under Section 5 [15 U.S.C.A. § 717d]. However, despite the method employed, the effect remains the same—the company would be compelled to enlarge its facilities, contrary to the express declaration of the court quoted above that to require such is 'beyond the power of the Commission.' To impose such a requirement would put us in the position of doing indirectly what we are forbidden to do directly. Familiar rules of law and our own regard for a proper observance of the limitations which Congress

any other respect, either as between localities or as between classes of service." 15 U.S.C.A. § 717c(b).

10. "(e) Except in the cases governed by the provisos contained in subsection (c) of this section, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this

chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require." 15 U.S.C.A. § 717f(e).

and the courts have placed upon our authority both restrain us from pursuing such a course.

"These same reasons require us to reject the proposition that an order requiring the enlargement of facilities by way of a condition to a certificate authorization would be a permitted exercise of power, since the action taken by the company under such a condition would be 'voluntary', not 'mandatory'. As we point out later, such a distinction is completely hollow in view of the fact that the condition in question would impose heavy economic pressures upon the company. Furthermore, a 'choice' between the grant of a certificate on condition that the company enlarge certain other transportation facilities, on pain of denial of the certificate authorization if the company refuses to accede to the condition, cannot fairly be called 'voluntary'.

"The rationale of the Panhandle case establishes that our lack of authority to compel the enlargement of facilities by means of a condition to a certificate does not turn upon any such narrow distinctions as the above. It hinges upon a consideration far more basic. The heart of the matter the court stated in the following language (204 F.2d at page 680):

' * * * In the light of Section 7(a) we are compelled to conclude that Congress meant to leave the question whether to employ additional capital in the enlargement of its pipeline facilities to the unfettered judgment of the stockholders and directors of each natural-gas company involved.'

"As the court's language establishes, there is a sphere wherein, under the Act, the judgment of the stockholders and directors of the company has free exercise, and the investment of capital for the purpose of enlarging pipeline facilities comes within that sphere. We can deny the proposed construction of facilities but except to the limited extent the Act permits, we cannot require a company to risk its capital in a venture which in the exercise of its officers' judgment, it considers unwise to undertake. But the effect of the condition imposed by the Examiner's decision would be to compel Panhandle to enlarge the Liberty Lateral. Indeed, that is its purpose. Thereby, we would tell Panhandle it may either enlarge all the laterals or none of them. And by specifying the volumes of gas which shall be delivered by the Liberty Lateral, we would not only require the investment of capital associated therewith but would define the extent of investment. Obviously, this would take decision on these matters, respecting which it is management's right and obligation to judge, out of management's hands.

"Moreover, the imposition of a condition requiring the company to enlarge the lateral, rather than an express direction to do so, does not render the requirement any the less mandatory. Undeniably, the condition involves coercion which precludes the free exercise of managerial discretion. As the company puts it, 'Either Panhandle must abandon hope of successfully investing to enlarge markets of its own choice, or Panhandle must submit to the obligation of enlarging its facilities to serve markets, which do not, in Panhandle's considered judgment, warrant the investment involved.' We cannot but conclude that if Congress had intended that we have a power of such extent and possibly far-reaching impact, the grant of such authority would be confirmed by something more specific than the general and rather standardized 'conditions' provision of Section 7 (e).

"It has been argued that the standard of 'public convenience and necessity' is sufficiently broad to per-

mit the Commission to consider matters of discrimination in passing upon whether to grant a proposed authorization, although no judicial decisions have been cited which construe this phrase so broadly and we know of none. In any event, assuming that our authority were held to extend this far, it is logical to assume that the discrimination to be thus considered must be shown to have some reasonable connection or relationship to the particular certificate authorization proposed. And we cannot find that there is such a reasonable relationship or connection between the claimed discrimination on the Liberty Lateral and the proposal to enlarge the other ten laterals in this case.

"In addition, the record in this case does not establish the economic feasibility of the project for the enlargement of the Liberty Lateral contended for by Central West and relied on by the Examiner. Central West put in evidence a comparison of the estimated cost of the proposed new construction on the Liberty Lateral with that on the other laterals for which Panhandle seeks a certificate, to show that the cost of construction per Mcf of increased peakday capacity on the Liberty Lateral compares favorably with that on the other laterals. But there was no study of markets, loads or revenues of the proposed enlargement, and the record is silent on such important matters as expenses, depreciation, return, taxes, and the other components of a cost of service. Accordingly, there was no way for appraising the economic feasibility of the enlargements on the basis of annual use or load factor. By reason of the above and other defects in the record we cannot conclude that the project for enlarging the Liberty Lateral has been shown to be economically feasible. Thus, even assuming we have the authority to require the enlargement of facilities —which we have already concluded we do not—we are unable to find, as the Act requires, that the proposed condition is a reasonable one, within the meaning of Section 7(e).

"In carrying out our functions we must proceed within the limits the Act prescribes; and for the foregoing reasons we consider that we lack the authority to impose the condition the Examiner required, desirable though its purpose is. As hereinbefore found, the public convenience and necessity require the issuance of certificates for the enlargement of the ten laterals above described and as requested by Panhandle. No condition can lawfully be interposed requiring the enlargement of the Liberty Lateral. In view of the foregoing, no further discussion of the company's other contentions is necessary."

■■ We are in complete accord with the views thus expressed by the Commission and need add little to its able discussion of the impact of the Act in the situation disclosed in this case. It is clear that the discrimination which will be suffered by Panhandle's customers on the Liberty lateral as against its customers on the 10 laterals to be enlarged will result solely from the decision of Panhandle's stockholders and directors not to include the Liberty lateral in the expansion program which they are undertaking with respect to 10 other laterals. As we pointed out in our opinion in the first case this was a decision which the Act permitted Panhandle's stockholders and directors to make in the exercise of their own judgment wholly uncontrolled by the Commission. The Commission was, therefore, right in not regarding this discrimination as being undue or unreasonable within the ban of section 4(b) of the Act and, therefore, an unlawful discrimination which it was required to take into account in making its determination whether the public convenience and necessity required the en-

---

largement of the 10 laterals which Panhandle did desire to enlarge.

In its application for rehearing of the Commission's order Central West advanced another argument in support of its position. It is that because subsection (e) was added to section 7 of the Natural Gas Act in 1942,[11] 4 years after the enactment of the Act, its grant of power to the Commission to attach conditions to the issuance of a certificate of public convenience and necessity is not limited by the proviso of subdivision (a) [12] of that section which must be regarded as to that extent repealed by implication. There is no merit in this contention. As we said in our opinion in the first case,[13] all sections of the Act must be reconciled so as to produce a symmetrical whole. "Our duty is to read the statute according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation." United States v. Temple, 1881, 105 U.S. 97, 99, 26 L.Ed. 967. Without more specific legislative direction, we cannot ascribe to Congress a purpose to repeal the prohibition against compulsory enlargement of transportation facilities, a provision so clearly set out in section 7(a) of the Act. The well-settled rule that repeal will not be implied unless there is an irreconcilable conflict between the two statutes [14] is applicable here. For there is no irreconcilable conflict between the prohibition of subsection (a) against the compulsion of enlargement of transportation facilities and the grant by subsection (e) of power to attach such reasonable conditions to the issuance of a certificate as the public convenience and necessity may require. All that is needed to reconcile the two subsections is to construe what is a reasonable condition under subsection (e) in the light of what is prohibited by subsection (a). Thus construed subsection (a) does not impair the broad power to attach terms and conditions to the issuance of a certificate to an applicant which subsection (e) confers upon the Commission except to the extent that such a term or condition would have the effect of compelling the enlargement of the applicant's transportation facilities.

The order of the Commission will be affirmed insofar as it failed to attach to the certificate of public convenience and necessity issued to Panhandle Eastern Pipe Line Company the condition requested by Central West Utility Company.

McLAUGHLIN, Circuit Judge (dissenting).

This proceeding is not controlled by our decision in 204 F.2d 675. There we held that the action of the Commission under Section 5(a) of the Act was prohibited by Section 7(a) which withholds from the Commission the power to compel enlargement of a natural-gas company's transportation facilities when to do so would impair its ability to render adequate service to its customers. The presently disputed order is directly subject to Section 7(e) of the Act. Under that Section the Commission can only issue a certificate of public convenience " * * * if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of the Act and the requirements, rules, and regulations of the Commission there-

---

11. Subsection (e) was added to section 7 by the Act of February 7, 1942, 56 Stat. 84.

12. "(a) * * * *Provided,* That the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers." 15 U.S.C.A. § 717f(a).

13. 204 F.2d 675, 679.

14. United States v. Borden Co., 1939, 308 U.S. 188, 198–199, 60 S.Ct. 182, 84 L. Ed. 181; Federal Trade Commission v. A. P. W. Paper Co., 1946, 328 U.S. 193, 202, 66 S.Ct. 932, 90 L.Ed. 1165; Securities and Exchange Commission v. Morgan, Lewis & Bockius, 3 Cir., 1953, 209 F.2d 44, 48.

under, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

By 7(e) if applicant Panhandle Eastern is in violation of the Act in connection with the very subject matter of its application it cannot be granted the sought for certificate. And Panhandle is in direct violation of Section 4(b) of the Act[1] by its unlawful discrimination against Central West. That discrimination as found by the Commission in its opinion 218, 10 F.P.C. 361, was not disputed by Panhandle on review of the opinion in this court in the 204 F.2d 675 case above mentioned. It is independently established here by the Presiding Examiner's findings holding specifically, as they do, that Panhandle has been and was granting undue preference to the customers of the favored ten laterals in its enlargement program to the detriment of the Liberty Lateral customers which action amounted to unlawful discrimination prohibited by Section 4(b).

Section 7(e) came into the Act as an amendment more than three and a half years after Sections 5(a) and 7(a). It carefully strengthened the hand of the Commission in dealing with the issuance of certificates of convenience and necessity. There is not the slightest indication that Congress gave this additional power to the Commission for the strange purpose of emasculating it by reading 7(a) against it and so forcing the practical abandonment of the amendment.

The new section calls for no diluting interpretation. If Section 7(a) should be repugnant to it, 7(e) would control. In that latter section we are dealing with a clear mandate of Congress. Non-compliance with it is not excused by our opinion in 204 F.2d which never even considered it.

In the earlier decision involving the same basic charge of prohibited discrimination lodged by Central West against Panhandle this court declared that, assuming such discrimination, the Commission was without power under Section 7(a) of the Natural Gas Act to order, in effect, enlargement of the Liberty Lateral for the purpose of abating such discrimination. In this case the court declares that the Commission is without authority under Section 7(e) of the Act to deny a certificate of necessity and convenience where the identical discrimination by Panhandle exists. The result of the two decisions together is to deprive the Commission of all power to prevent or abate the "undue preference or advantage to any person * * * [or the maintenance of] any unreasonable difference in service [or] facilities."

The collateral suggestion that Panhandle's application be allowed provided it eliminated the discrimination against the Liberty Lateral users is not the real issue in this Docket G–2433. The relief sought by Central West as prayed for in its petition to intervene was that Panhandle's application for a certificate be denied. Under the Act it is entitled to that relief. The discrimination in violation of Section 4(b) has been found to exist. The Commission is, therefore, bound by 7(e) to deny the application.

---

1. Section 4(b) of the Act reads:

"No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service."