CORNING GLASS WORKS, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

Columbia Gas Transmission Corporation,
UGI Corporation, Washington Gas
Light Corporation, Intervenors.

PUBLIC UTILITIES COMMISSION OF
OHIO, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,

People's Counsel of Maryland, Public Ser-
vice Commission of Maryland, UGI Cor-
poration, Baltimore Gas and Electric
Company, Washington Gas Light Com-
pany, Public Service Commission of the
State of New York, Columbia Gas
Transmission Corporation, Intervenors.

Nos. 81–1216, 81–1350.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 29, 1982.

Decided April 13, 1982.

Franz M. Oppenheimer, Washington, D.
C., with whom Carmen D. Legato and Ed-
ward R. Muller, Washington, D. C., were on
the brief for petitioner in No. 81–1216.

Jonathan L. Heller, Asst. Atty. Gen., Co-
lumbus, Ohio, State of Ohio, with whom
William J. Brown, Atty. Gen., State of
Ohio, and Marvin I. Resnik, Asst. Atty.
Gen., Columbus, Ohio, State of Ohio, were
on the brief for petitioner in No. 81–1350.

Glenn S. Krassen, Atty., Federal Energy
Regulatory Commission, Washington, D. C.,
with whom Jerome M. Feit, Deputy Sol.,
Federal Energy Regulatory Commission,
and Andrea Wolfman, Washington, D. C.,
Atty., Federal Energy Regulatory Commis-
sion, were on the brief for respondent in
Nos. 81–1216 and 81–1350.

Stephen J. Small, Charleston, W. Va.,
with whom Giles D. H. Snyder, Columbus,
Ohio, was on the brief for intervenor, Co-
lumbia Gas Transmission Corp. in Nos. 81–

1216 and 81–1350. John M. Hill, Charleston, W. Va., also entered an appearance for intervenor Columbia Gas Transmission Corp.

David E. Blabey and Richard A. Solomon, Washington, D. C., were on the brief for intervenor Public Service Commission of the State of New York in No. 81–1350.

J. David Mann, Jr., Washington, D. C., entered an appearance for intervenor UGI Corp. in Nos. 81–1216 and 81–1350.

James A. Biddison, Jr. and Hodges B. Childs, Baltimore, Md., entered appearances for intervenor Baltimore Gas and Elec. Co. in No. 81–1350.

Lewis Carroll and Gordon M. Grant, Washington, D. C., entered appearances for intervenor Washington Gas Light Co. in Nos. 81–1216 and 81–1350.

Allen M. Freifeld, Baltimore, Md., entered an appearance for intervenor Public Service Commission of Maryland in No. 81–1350.

Carmen D. Legato, Washington, D. C., entered an appearance for intervenor People's Counsel of Maryland in No. 81–1350.

Before WALD, MIKVA, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

## INTRODUCTION

In response to the 1970s shortage in interstate natural gas supplies, Columbia Gas Transmission Corporation (Columbia), an interstate natural gas pipeline company, introduced into its system revaporized liquefied natural gas (LNG) imported from Algeria.[1] This Algerian LNG has a higher heating value and specific gravity than the domestic natural gas Columbia historically supplied to its customers.[2] Absent modification of the gas by Columbia, or adjustments of systems or equipment by distributors or end users, these qualities of the LNG could adversely affect customers who received more than a *de minimis* amount.[3] Modification of the LNG prior to its introduction into the pipeline would have entailed large costs. *See* J.A. 12–13, 94. Columbia therefore made no modifications itself. It introduced the LNG directly into its pipeline system and left the necessary conversion costs to affected customers. The adjustments required could be made by the distributor, Columbia's direct (wholesale) customer, or by indirect (retail) customers, those who purchased Columbia's gas from a distributor. Due to the configuration and flow characteristics of the Columbia system, relatively few local distribution systems received the LNG. Most continued to receive gas from Columbia's traditional source in the Southwest.

In a multi-faceted proceeding on rate increases proposed by Columbia, the Federal Energy Regulatory Commission (FERC or Commission) considered whether the costs incurred as a result of the introduction of LNG should be spread systemwide. The Commission reasoned that all who received Columbia's gas had benefited from the increased supply. It therefore determined that distributors (wholesale customers) who incurred conversion costs to accommodate the LNG should be reimbursed by Columbia; in turn, Columbia was to allocate and recoup these costs pro rata from all of its wholesale customers. Distributors may be reimbursed under FERC's order if they paid conversion costs themselves, or if a state commission requires them to reimburse conversion costs paid by their retail customers.

1. Deliveries of Algerian LNG to the United States terminated in April 1980.

2. The domestic natural gas has an approximate heating value of 1010 Btu/cf and a specific gravity of approximately 0.576; the Algerian LNG has an approximate heating value of 1120 Btu/cf and a specific gravity of approximately 0.640. Joint Appendix (J.A.) 12, 92.

3. For example, "a substantial number of [end users'] appliances would experience incomplete combustion when burning LNG. The resultant sooting within [an appliance's] combustion chamber would gradually block flue passages, [thereby] reducing air flow and producing progressively more incomplete combustion and excessive amounts of carbon monoxide." J.A. 96.

FERC declined to order reimbursement to distributors for conversion costs paid by retail customers where the distributor had incurred no expense and the state commission had not directed the distributor to reimburse the retail customer.[4]

The petitions before us do not challenge major portions of FERC's decision—the determination to spread among all distributors LNG-associated costs directly incurred by the distributors whose systems received the Algerian gas, the standard governing reimbursement, application of that standard to distributors who presented costs for reimbursement, and the mechanism for verification of costs later claimed. Nor is it disputed that Columbia chose the least costly means of handling the LNG supply. The toll systemwide would have been considerably higher had Columbia itself essayed the modifications. J.A. 12–13, 94. The controversy we face is limited to the Commission's treatment of costs incurred by the distributors' customers, retail purchasers of Columbia's gas. On that aspect of FERC's disposition, the petitioners take diametrically opposite positions.

The Public Utilities Commission of Ohio (Ohio P.U.C.) maintains that FERC has no authority at all to deal with LNG conversion costs incurred by retail customers; FERC is powerless to act, Ohio P.U.C. argues, even when a state commission directs the distributor to pick up the tab. Corning Glass Works (Corning), in contrast, urges that FERC may and should establish a basis for cost recovery by all distributors whose retail customers incurred conversion costs, whether or not state action has been taken to shift the costs to the distributor. Ohio P.U.C. would have us cut back FERC's order and confine it to costs directly incurred by distributors. Corning would have us instruct the Commission to enlarge its order to provide for reimbursement to distributors, even when they are not out-of-pocket, if their retail customers incurred conversion expenses.

We conclude that FERC appropriately exercised its authority under section 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b), to regulate "the sale in interstate commerce of natural gas for resale," but not "the local distribution of natural gas." *See infra* note 9. Accordingly, we join the presiding administrative law judge, who rendered the initial decision, and the Commission in rejecting the opposing positions tendered to us in the petitions for review.[5]

## I. THE OHIO P.U.C. PETITION

Ohio P.U.C. asserts, and the Commission does not dispute,[6] that FERC lacks statutory authority to regulate local distribution companies and their retail customers, to decide initially whether the retail customer or the distributor should bear the costs of conversion, or to order Columbia to reimburse retail customers directly for their conversion expenses. Relying on these premises, and arguing that FERC may not "accomplish indirectly that which is beyond its authority to accomplish directly," Ohio P.U.C. concludes that the Commission is powerless to "remedy the inequities per-

4. The Commission affirmed, with minor modifications, a comprehensive initial decision by an administrative law judge. J.A. 7–87. The petitions for review address Commission Opinion No. 101, "Opinion and Order Affirming Initial Decision," 13 FERC ¶ 61,102 (Nov. 6, 1980), *reprinted in* J.A. 88–100, and Commission Opinion No. 101–A, "Opinion and Order Denying Rehearing," 14 FERC ¶ 61,073 (Jan. 28, 1981), *reprinted in* J.A. 122–25.

5. Intervenor Columbia, but not the Commission, has raised a threshold issue. Columbia argues that both petitions for review are premature. Both should be summarily dismissed, Columbia maintains, because neither petitioner is currently "aggrieved" by the Commission's

action within the meaning of section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), which entitles any "aggrieved" party to judicial review. *See* Columbia Brief 5, 9–12. This court rejected similar argument in *American Pub. Gas Ass'n v. FERC,* 587 F.2d 1089, 1094 (D.C.Cir.1978). The petitions raise legal issues only, issues cleanly presented for settlement now, and FERC's disposition requires current expenditures of "substantial energies" by the Commission and affected persons. *See id.* We therefore find the contested Commission determination appropriate for review at this time.

6. FERC Brief 12–13.

ceived." Ohio P.U.C. Brief 12, 13. FERC has no back door jurisdiction, Ohio P.U.C. insists, to follow up a state commission order directing a distributor to recompense conversion costs paid by its retail customers with a FERC order directing the pipeline to reimburse the distributor. The state commission order is action wholly within the state's domain and such state action, Ohio P.U.C. contends, is untouchable by FERC.

Ohio P.U.C. misperceives the nature of the Commission action at issue. Under section 4 of the Natural Gas Act, 15 U.S.C. § 717c, it is FERC's charge to insure that all rates within its purview are just and reasonable [7] and that no rate is unduly discriminatory.[8] In the decisions under review, FERC concluded that unless the LNG conversion costs directly or indirectly incurred by a distributor were spread systemwide, Columbia's rates as to that distributor would be unduly discriminatory, unjust and unreasonable. J.A. 30, 37–38, 93, 124. It therefore ordered such distributors reimbursed. *See supra* pp. 393–394. FERC's action, correctly comprehended, is clearly within its statutory authority; in essence, the Commission did nothing more than set the

rate for a "sale in interstate commerce of natural gas for resale for ultimate public consumption . . . ." 15 U.S.C. § 717(b).[9]

From the vantage point of assuring that Columbia's rates to distributors are just and reasonable and not unduly discriminatory, it is immaterial whether the LNG conversion costs were initially incurred by the distributor or by an end user to whom reimbursement from a distributor was ordered by a state commission. The result in both situations is the same: the distributor has shouldered alone a financial burden that other distributors, with no right to preferential treatment, have escaped. And FERC's remedy for the undue preference in both instances is the same: spread the costs systemwide to insure that Columbia's interstate wholesale rates are just and reasonable and not unduly discriminatory.[10] It is well settled that the Commission may consider nonjurisdictional activities and transactions (here, the retail customer's costs and the reimbursement order of the state commission) "when it fixes the rates for interstate wholesale sales which are subject to its jurisdiction." *Panhandle Eastern Pipe Line Co. v. FPC*, 324 U.S. 635, 646, 65 S.Ct.

---

7. Section 4(a) provides:

   All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges, shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

8. Section 4(b) states:

   No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

9. Section 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b), which defines part of the Commission's jurisdiction, provides:

   The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate

public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

10. Ohio P.U.C. argues that FERC may remedy undue discrimination only when caused by a natural-gas company and that when a distributor is ordered by a state commission to reimburse customers "[i]n no way, shape, or form" has the interstate seller caused the discrimination. *See* Ohio P.U.C. Reply Brief 7–11. The argument that when a state commission order is in the picture "Columbia has done nothing . . . requiring additional expenditures" by the distributor rests on a severely constricted view of causation. Columbia decided to introduce the Algerian LNG into its pipeline system. Further, Columbia decided not to modify the LNG itself. Unquestionably, it was Columbia's decisions, in the first instance, that triggered the burden on all distributors immediately or ultimately charged with the payment of conversion costs.

821, 826, 89 L.Ed. 1241 (1945). *Cf. FPC v. Conway Corp.*, 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976).[11]

We therefore conclude that the Commission did not act beyond its authority when it decided that a distributor is entitled to reimbursement if a state commission orders the distributor to bear conversion costs initially incurred by end users. We now turn to Corning's contention that the Commission erred in failing to order reimbursement when the state commission has not ordered the distributor to recompense its retail customers.

## II. THE CORNING PETITION

Corning accepts for purposes of its current controversy with the Commission[12] FERC's lack of authority to "directly order a wholesale customer (distribution company) of a regulated pipeline company to reimburse the distribution company's customers (consumers)...." Corning Brief 37. Accordingly, Corning did not seek a Commission decree ordering Columbia or the distribution company that sold Columbia's gas to Corning, Shenandoah Natural Gas Company (Shenandoah), to reimburse Corning for its conversion costs. *Id.* at 38; J.A. 118. Rather, Corning urged FERC to adjust, to the extent Corning had incurred conversion expenses, the price Columbia charged Shenandoah for LNG even though Shenandoah has not, voluntarily or pursuant to direction by state authority, reimbursed Corning.[13]

Because Shenandoah has borne no loss, the Commission declined to make the ad-

---

**11.** Neither *Northern Cal. Power Agency v. FPC*, 514 F.2d 184 (D.C.Cir.) (*NCPA*), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975), nor *Central West Util. Co. v. FPC*, 247 F.2d 306 (3d Cir. 1957), relied on by Ohio P.U.C., is to the contrary. In *NCPA*, this court found that the petitioner had not met its burden of showing a reasonable nexus between the jurisdictional and the non-jurisdictional activities under consideration. 514 F.2d at 189. The existence of such a nexus is not contested here. In *Central West*, the court held only that the decision of a pipeline's directors and stockholders to expand its service to some customers but not others was not undue or unreasonable discrimination proscribed by section 4(b) of the Natural Gas Act. 247 F.2d at 312.

**12.** Citing section 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a), Columbia asserts that this court is without jurisdiction to consider Corning's petition for review because Corning did not file its application for Commission rehearing until Monday, December 8, 1980, 32 days after the Commission issued Opinion No. 101. Columbia Brief 5–9. Section 19(a) provides in relevant part:

Any person, State, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. The application for rehearing shall set forth specifically the ground or grounds upon which such application is based. Upon such application the Commission shall have power to grant or deny rehearing or to abrogate or modify its order without further hearing. Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied. No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon.

The thirtieth day after issuance of Opinion No. 101 was Saturday, December 6, 1980. Commission rules provide that if the last day of a "designated time period ... is a Saturday, Sunday, or a legal holiday in the District of Columbia ... the period shall run until the end of the next day which is not a Saturday, Sunday, or a holiday." 18 C.F.R. § 1.13(a). Corning's rehearing petition met the 30-day limit, as the Commission defines that limit. Accordingly, we hold that Corning's petition is properly before us for review. *See Cities of Batavia v. FERC,* 672 F.2d 64, 72–73 (D.C.Cir.1982).

**13.** Corning acknowledges that even if FERC had entered such an order, "Corning ultimately could not recover its losses without some action by [the West Virginia Public Service Commission]." Corning Brief 38 n.18. Corning's attack, therefore, is limited to that portion of the Commission's decision which makes state action directing Shenandoah to reimburse Corning prerequisite to a FERC order adjusting the Columbia-Shenandoah rate. Corning suggests that it is "highly uncertain" whether the West Virginia authority is empowered to order Shenandoah to reimburse Corning. *Id.* *But see* W.Va.Code §§ 24–1–1(a)(4), 24–2–3 (1979) (WVPSC empowered to remedy rates found to be unjustly discriminatory). At argument in this case, Corning's counsel confirmed that Corning had not sought any directive from the West Virginia commission.

justment Corning sought. FERC agreed with the analysis of the administrative law judge, J.A. 98, who reasoned that only after state authority had imposed the end user's costs on the distributor could such costs "create undue discrimination with respect to other direct wholesale customers of Columbia.... [T]he Commission then could find that such costs should be reimbursed by Columbia and spread system-wide to eliminate the undue discrimination." *Id.* at 21. However, until the distributor is out-of-pocket, the Commission could not conclude that the wholesale rate the distributor paid Columbia occasioned undue discrimination. In so viewing the matter, FERC recognized that it is for the states to say whether rates charged by distributors to retail customers are just and reasonable. In respecting state regulatory authority and declining to forecast action by state commissions, FERC, approving the ALJ's initial decision, exercised "sound discretion." *See id.* We believe FERC displayed proper sensitivity to the federal-state regulatory ambits involved and did not err in refusing to alter the wholesale rate *before* a distributor has borne any loss.[14]

*Texas Eastern Transmission Corp. v. FPC*, 414 F.2d 344 (5th Cir. 1969) (*Texas Eastern II*), cert. denied, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 89 (1970), cited by Corning, does not warrant a different result. During the period 1961–64, Texas Eastern, an interstate pipeline carrier of natural gas, had paid rate increases to its suppliers. Texas Eastern had not passed these rate increases on to its distributor-customers in the form of higher prices. Ul-timately the suppliers' rate increases were held unlawful; the suppliers were ordered to refund the amounts collected pursuant to these excessive rates. *See Texas Eastern Transmission Corp. v. FPC*, 357 F.2d 232, 233–35 (5th Cir. 1966) (*Texas Eastern I*).

The FPC then concluded that Texas Eastern had earned more than a reasonable rate of return for the years in question. It therefore ruled that Texas Eastern was not entitled to the refunds and ordered the pipeline to pass them on to its distributors, through rates within the Commission's jurisdiction. The Commission believed that by ordering this pass on, "it was serving the statutory purpose of the Act of benefitting ultimate consumers by placing the refunds within the jurisdiction of the state regulatory authorities so as to place them in position to benefit the ultimate consumers." *Texas Eastern II*, 414 F.2d at 350. The Fifth Circuit affirmed this order both as an action within the FPC's statutory authority and as a product of rational decisionmaking. *Id.* at 348–50.[15]

The Commission here has ruled that the rate paid by a distributor to Columbia is not unduly discriminatory, unjust or unreasonable if that distributor has not incurred, directly or indirectly, any modification costs. In contrast to the situation in *Texas Eastern*,[16] there are currently no refunds to be disbursed as a result of Columbia's sales to Shenandoah. FERC determined that a reallocation of costs among the pipeline's wholesale customers fairly should depend on assurance that distributors awarded reimbursement are in fact obligated to pay the amount reimbursed. We find that de-

---

14. If Corning's position prevailed and a state commission refused to order a distributor to reimburse an end user's conversion costs after FERC ordered Columbia to reimburse the distributor based on the end user's costs, the end user would remain unrecompensed, and the distributor would pocket a windfall.

15. Had Texas Eastern been permitted to retain these refunds, the rates it charged its distributors would have been open to investigation as excessive, unjust and unreasonable. *See id.* at 348. Upon such a determination, Texas Eastern may have been ordered to refund the monies collected pursuant to *its* unlawful rates.

16. Corning's reliance upon *Conway, supra,* is also misplaced. The Court held in *Conway* that the Commission may properly consider non-jurisdictional activities when determining whether wholesale rates within the Commission's jurisdiction are discriminatory and anti-competitive. *See* 426 U.S. at 272–73, 96 S.Ct. at 2001. Here, FERC has not refused to consider non-jurisdictional transactions. *See supra* pp. 393–394, 394–396. It has simply ruled that until the distributor in fact incurs conversion costs, the wholesale rate is not unduly discriminatory, unjust or unreasonable.

termination both consistent with the Commission's responsibilities under the Natural Gas Act and a rational solution to the part of the problem generated by Columbia's introduction of Algerian LNG that is before us for review.

CONCLUSION

For the foregoing reasons, the opinions under review in this case are

*Affirmed.*