**TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 26477.**

United States Court of Appeals
Fifth Circuit.
June 20, 1969.

David T. Searls, J. Evans Attwell, Lynn R. Coleman, Jack D. Head, Vinson,

Elkins, Weems & Searls, Houston, Tex., for petitioner, Texas Eastern Transmission Corp.

J. Calvin Simpson, Mary Moran Pajalich, Lawrence Q. Garcia, San Francisco, Cal., for intervenor, People of State of Cal. and Public Utilities Commission of State of Cal.

Harry L. Albrecht, Washington, D.C., for intervenor, Ind. Natural Gas Assn. of America.

Jerome L. McGrath, Washington, D.C., Donald Blanken, Paul Auerbach, Philadelphia, Pa., for intervenor, Philadelphia Elec. Co.

Peter Schiff, Sol., Federal Power Commission, Israel Convisser, Richard A. Solomon, Gen. Counsel, Abraham R. Spalter, Asst. Gen. Counsel, Washington, D.C., for Federal Power Commission.

Morton L. Simons, Washington, D.C., for intervenor.

Kent H. Brown, Albany, N.Y., for Public Service Commission of N.Y.

Edwin F. Russell, Barbara M. Suchow, Brooklyn, N.Y., for intervenor, Brooklyn Union Gas Co.

Edward F. Mannino, Dilworth, Paxson, Kalish, Kohn & Levy, William T. Coleman, Jr., Robert W. Maris, Philadelphia, Pa., for intervenor, Philadelphia Gas Works Div. of UGI Corp.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, District Judge.

BELL, Circuit Judge:

This case involves the disposition of refunds resulting from the disallowance under § 4(e) of the Natural Gas Act, 15 U.S.C.A. § 717c(e), of rate increases collected during the period 1961–64 from Texas Eastern by its suppliers. The increases were paid and absorbed by Texas Eastern in the sense that they were not passed on by Texas Eastern to its customers in the form of rate increases. The refunds, held in escrow by the suppliers and amounting to more than $10,000,000, were claimed by Texas Eastern. The claim was rejected by the Commission on the premise that the re-

funds should flow through to the distributor customers of Texas Eastern for the benefit of the consuming public.

The sole issue before the Commission was the entitlement of Texas Eastern to the refunds. Texas Eastern, an interstate pipeline carrier of natural gas, purchases gas from producer-suppliers. It, in turn, sells to distributors who sell to the consumer. The producer-suppliers are not involved, their rate increases having already been disallowed; hence, the creation of the refunds. On the entitlement hearing, Texas Eastern, of necessity but indirectly, was asserting such equities as it had to the refunds as against the right of consumers to just and reasonable rates.

In Texas Eastern Transmission Corp. v. Federal Power Commission, 5 Cir., 1966, 357 F.2d 232, the court dismissed, on the ground of prematurity, petitions for review of the Commission orders directing the suppliers to retain the refundable amounts until the question of entitlement as between the pipeline and the customers of the pipeline could be determined. Judge Wisdom, speaking for the court, adverted to the novelty of the question presented as follows:

"The novel orders of the Federal Power Commission attacked in these proceedings mark the Commission's decision to take a new and close look at its jurisdiction over refunds generated under Section 4(e) of the Natural Gas Act. * * * Does the statute permit and does sound policy require the Commission to control the disposition of refunds? To what extent may the Commission require the flow-through of refunds from natural gas producers to jurisdictional pipeline companies to nonjurisdiction local distributors and, indirectly, to the ultimate consumers for whom, the Supreme Court has said, the Act provides a 'complete, permanent, and effective bond of protection'? * * * To obtain the answers to these and related questions, the Commission ordered United Gas Pipe Line Company to retain certain refunds, reflecting

excessive earnings, 'subject to further order of the Commission [after a hearing] directing the disposition of those amounts.' These retention orders state that their purpose is to enable the Commission to determine 'whether United's immediate customers, or the customers of such customers, are legally and equitably entitled to retain the refunds'." 357 F.2d at 232–233.

The hearing and orders which followed that decision form the subject matter of the petition to review now before us. The Commission's approach was twofold to the extent that it was concerned with refunds and thus with past activity as well as with prospective procedures.

Under past policy of the Commission, when a supplier rate increase was disallowed, the refund went to the pipeline unless the pipeline had increased its rates in response to the supplier increase. Where the pipeline had increased its rates under these circumstances, it would be required to flow through refunds to its customers. The policy adopted in these proceedings, for prospective use, was the requirement that a pipeline, to claim supplier increase refunds, must file tracking rate increases. Since Texas Eastern was not, at the time the Commission entered its refund orders against the suppliers, able to file tracking rate increases for the years 1961–1964, the Commission afforded it an opportunity to make a factual showing of entitlement to the refunds in question.

The burden imposed on Texas Eastern evolved into showing that it earned less than a reasonable rate of return in the years in question. No proof was offered for the year 1961 and the proof for the years 1962–1964 was such that the Commission concluded that Texas Eastern earned more than a reasonable rate of return. Texas Eastern's claim was thus denied.

The Commission justified its policy departure on the ground that the primary purpose of the Natural Gas Act was to

protect ultimate consumers of natural gas from excessive charges and that the Act must be applied so as to protect their collective interests. Thus, the Commission said: "* * * we find that under the Act the ultimate consumers of natural gas are proper beneficiaries of our disposition of the subject refunds." Texas Eastern points to the hiatus in power in that the Commission lacks jurisdiction to see that the refunds will go to ultimate consumers; that its authority can extend only so far as to give the refund to distributors; and that there is no assurance that ultimate consumers will in any way benefit. Thus, Texas Eastern argues that the dispute is between itself and its distributor-customers, and that as between these two all equities lie with it.

Of the several issues presented, the foremost is directed to the question of the power of the Commission to order these refunds. This, in turn, depends on a statutory base. Assuming a statutory base, a further issue is whether the Commission was barred from adopting the new policy by its past actions. Texas Eastern also asserts that as to the refunds under consideration, the Commission's order is barred under the reparations doctrine, and, as to some if not all of the refunds, by its 1961 settlement agreement with the Commission, and by final orders entered by the Commission disposing of certain supplier rate increases. The last issue, assuming statutory power and no bar, is whether the Commission's order, including its new refund flow through policy, was rationally based.

### I.

We will first consider the question of power. We find the necessary statutory authority for the action of the Commission. The statutory language is as follows:

"* * * Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified." 15 U.S.C.A. § 717c(e)

This statutory authority to require refunds must be coupled with the fact of the overriding purpose of the Natural Gas Act to protect consumers in their purchase of gas to the end of keeping rates as low as possible. This purpose appears expressly in the Act, § 4(a),[1] and in the Supreme Court decisions. See, for example, Federal Power Commission v. Hope Natural Gas Co., 1944, 320 U.S. 591, 610, 64 S.Ct. 281, 88 L.Ed. 333; Atlantic Refining Co. v. Public Service Comm. of State of New York, 1959, 360 U.S. 378, 388, 79 S.Ct. 1246, 3 L.Ed.2d 1312; Federal Power Commission v. Tennessee Gas Transmission Company, 1962, 371 U.S. 145, 154, 83 S.Ct. 211, 9 L.Ed.2d 199.

Texas Eastern argues that the statutory language must be construed in light of the accounting provision of the Act,[2] and that as thus construed, it appears that refunds are to be paid to the one who is out of pocket. Thus, it is urged, since Texas Eastern paid the increased costs to its suppliers without passing such costs on to its distributors, it is the only party entitled to restitution through the receipt of the refunds.

[1]. 15 U.S.C.A. § 717c(a).

[2]. 15 U.S.C.A. § 717c(e), supra: "* * * to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, * * *."

Texas Eastern finds support for its accounting provision argument in Federal Power Commission v. Sunray, DX Oil Co., 1968, 391 U.S. 9, 24, 88 S.Ct. 1526, 20 L.Ed.2d 388, where the Supreme Court held that the Commission could not order a refund in excess of certificated rates. This was because, in reading the refund and accounting provisions of § 4(e) together, a refund could not exceed amounts received by reason of the increase; otherwise, the court said, would be to sanction reparations. Texas Eastern urges, based on *Sunray*, that § 4(e) and the accounting section read together, allow disposition of refunds only to those persons in whose behalf such amounts were paid. We are unable to find this restriction in the applicable language.

The Commission, for its argument, points to the legislative history of the Act which indicates that early drafts included a provision to refund to the persons in whose behalf the sums constituting the refunds were paid. This language parallels provisions of the Interstate Commerce Act, 49 U.S.C.A. § 15 (7), and the Federal Power Act, 16 U.S.C.A. § 824d(e). This provision was, however, eliminated in the final draft of the Natural Gas Act and the Commission contends that it was therefore purposely not limited to ordering refunds to the pipeline-payer. This argument lends little weight to our determination.

■ Our view is that the Commission was authorized to see to disposition of the refunds in question on the basis of the purpose of the Act to protect ultimate consumers of natural gas. It must be borne in mind that the Commission created the refunds by disallowing supplier rate increases and by requiring that the sums in question be retained by the suppliers pending determination of entitlement. Texas Eastern could have filed rate increases to track the supplier increases. It chose not to do so for reasons of its own. One reason, no doubt, was that the Commission could have investigated the rates in the light of Texas Eastern's earnings.

Here the Commission afforded Texas Eastern the opportunity of justifying its entitlement to the refunds on a earnings basis without the concomitant risk of an investigation of its rates as would have been the case in the event of rate filings. This procedure was adopted to protect Texas Eastern in the face of the change in Commission policy as to disposition of refunds. This was a fair approach from the standpoint of protecting the interest of Texas Eastern and the consumer. To adopt Texas Eastern's position that it is, *ipso facto*, entitled to the refunds by virtue of having paid and absorbed them would be to countenance rate making by the producer-suppliers and Texas Eastern outside the protective ambit of § 4(e). This approach would do violence to the statutory scheme by avoiding, to the extent that the refunds exceed a fair return to Texas Eastern, any rate regulation whatever except under § 5 of the Act. 15 U.S.C.A. § 717d.

Texas Eastern places heavy stress on the literal meaning of the word "refund" and urges that it can only mean repayment to the one who paid. We place stress on the fact that the statute does not expressly require this course of action and that such a narrow construction would make it impossible to give effect to the purposes of the Act. This is a classic case of filling the intersticies within the outer limits of a statute. Cardoza, The Nature of the Judicial Process, Yale U. Press., pp. 112–113. The history of the Natural Gas Act is one of interstitial construction beginning with the Phillips Petroleum Co. v. Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, when the court concluded that the Commission was empowered to regulate rates of producers. See Sunray, supra, 391 U.S. 9, 16–18, 88 S.Ct. 1526.

Our conclusion is buttressed by the rationale of Federal Power Commission v. Interstate Natural Gas Company, 1949, 336 U.S. 577, 69 S.Ct. 775, 93 L.Ed. 895, where refunds, created by the court's staying rate reductions, were or-

dered disbursed in accordance with equitable principles even to the extent of by-passing the gas purchasers who made the payments into the fund.

We conclude that the Commission was possessed of the necessary statutory authority. Moreover, it appears that the procedure accorded Texas Eastern to establish its right to the refund was appropriate and not lacking any element of fairness.

## II.

■ We come next to the contention that the Commission was barred by its past actions from adopting the new refund policy. This argument runs from the proposition that the Commission had never before adopted such a policy; instead, the Commission in the past had consistently permitted all refunds resulting from the disallowance of supplier rate increases to be paid to the pipeline which paid the increased rates unless the pipeline had filed a corresponding rate increase, in which event the refunds would flow through to customers of the pipeline.

There is no merit whatever in this contention. The Commission was not precluded from adopting the new policy. The fact is that the Commission had neither adopted nor rejected the new policy. The administration of the Natural Gas Act since its enactment in 1938 has been one of gradual development. See, for example, Phillips Petroleum Co. v. Wisconsin, supra; and Sunray, supra. As the court noted in United States v. Morton Salt Company, 1950, 338 U.S. 632, 647–648, 70 S.Ct. 357, 94 L.Ed. 401, power is not lost by being allowed to lie dormant.

Texas Eastern also asserts that the Commission's order constitutes a reparation order and is thus barred. The Supreme Court pointed out in *Sunray* that the Commission has no reparation power. 391 U.S. at 24, 88 S.Ct. 1526. This is a form over substance or substance over form question. Texas Eastern's position is that the denial to it of the refunds is bound to be a reparation order

since it paid the amounts which constitute the refunds. The weakness in this argument is that one must assume that Texas Eastern was entitled to the refunds in the beginning. But this begs the question. The Commission created the refunds by its order against the suppliers. If the Commission has, as we have held, the power of disposition over the refunds, then the question becomes one of entitlement and not of reparations. Cf. Federal Power Commission v. Interstate Natural Gas Company, supra, 336 U.S. at 582–583, 69 S.Ct. 775. Cf. also United Gas Improvement Co. v. Callery Properties, Inc., 1965, 382 U.S. 223, 229–230, 86 S.Ct. 360, 15 L.Ed.2d 284. This contention is without merit.

■ We conclude also that the order was not barred by the 1961 settlement agreement between Texas Eastern and the Commission. That settlement involved supplier rate increases which are not here involved. To prevail, it is necessary for Texas Eastern to show that the agreement expressly or impliedly embraced the rate increases which gave rise to the instant refunds. We are unable to find any such coverage in the settlement agreement. It is true that some of the rate increases which gave rise to those here had been filed when the settlement agreement was consummated. That agreement, however, is restricted, as we construe it, to other increases and the power of the Commission as it respected the rate increases giving rise to the refunds here was unabated by the agreement.

This is likewise true as to the final orders issued by the Commission in disposing of certain other supplier rate increases. These proceedings were concerned with the lawfulness of the supplier rates in issue and did not govern the entitlement questions now in issue.

## III.

Lastly, we conclude that the order of the Commission was rationally based. "The judicial function is exhausted when there is found to be a rational ba-

sis for the conclusions approved by the administrative body". Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147, 1166.

■■ The answer to the rational basis inquiry depends, in the end, on the factual and legal basis for the commission's order and whether it protects the ultimate consumer. There is a more than ample factual basis for the order from the standpoint of Texas Eastern having failed to justify the refund on an earnings basis.

■ The essence of Texas Eastern's approach is that a rational basis was lacking due to the dilemma posed by the Natural Gas Act in that the Commission has no authority over the ultimate disposition of the refunds by the distributors. The rates of the distributors are regulated by the states and whether the ultimate consumers will receive the refunds is within the province of the state regulatory bodies. Federal Power Commission v. Interstate Natural Gas Company, supra; Central States Electric Company v. City of Muscatine, 1945, 324 U.S. 138, 65 S.Ct. 565, 89 L. Ed. 801. The Commission noted the limitation on its jurisdiction in this respect but assumed that the state regulatory authorities would discharge their respective responsibilities to benefit consumers. It pointed out that the regulatory commissions of California and New York had made clear their intentions in this regard. The Commission's view was that it was serving the statutory purpose of the Act of benefiting ultimate consumers by placing the refunds within the jurisdiction of the state regulatory authorities so as to place them in position to benefit the ultimate consumers. The Commission could not guarantee benefits for the ultimate consumers but absent its new policy there would be no way to benefit the ultimate consumers. We conclude that this was a rational basis for the Commission refund order. It was an approach to effective Federalism within framework and dictates of the Act.

The Commission protected Texas Eastern in the premises from the rigors of the retroactive application of a new policy by the procedure afforded it. Texas Eastern lost its claim on the merits as against the consumers but it may justly complain that its equities may exceed those of its distributor-customers in the event the refunds are not flowed through to the consumer. The matter has been remanded by the Commission to the hearing examiner for disposition of the refunds. The examiner held, and the Commission agreed, that " * * * In line with the *Interstate* case, further proceedings are necessary to insure that the sums here at issue, to the extent possible, be passed on to the ultimate consumers in accordance with the objectives of the Natural Gas Act." We have no doubt that satisfactory methods can be devised whereby the consumers will receive the benefit of these refunds. Creative federalism would teach a cooperative approach with the states to this end.

Affirmed.[3]

3. The petition to review involves the Commission's Opinion No. 540 issued May 3, 1968 and Opinion No. 540–A issued July 10, 1968.