**TEXAS GAS TRANSMISSION CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**TEXAS GAS TRANSMISSION CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**Memphis Light, Gas and Water Division, Memphis, Intervenor.**

**Nos. 19901, 20523.**

United States Court of Appeals, Sixth Circuit.

April 13, 1971.

---

George J. Meiburger, Washington, D. C., for petitioner; Gallagher, Connor & Boland, Washington, D. C., on brief; Christopher T. Boland, Gallagher, Connor & Boland, Washington, D. C., Robert O. Hock, Gen. Counsel, Steve H. Finch, Asst. Gen. Counsel, Texas Gas Transmission Corp., Owensboro, Ky., of counsel.

Peter H. Schiff, Sol., F. P. C., Washington, D. C., for respondent; Gordon Gooch, Gen. Counsel, Abraham R. Spalter, Asst. Gen. Counsel, David P. Stover, Atty., F. P. C., Washington, D. C., on brief.

Reuben Goldberg, Leo J. Steffen, Jr., Washington, D. C., George E. Morrow, Memphis, Tenn., on brief for intervenor.

Before CELEBREZZE and McCREE, Circuit Judges, and CECIL, Senior Circuit Judge.

McCREE, Circuit Judge.

Texas Gas Transmission Corporation petitions for review of two orders of the Federal Power Commission requiring it to remit (or flow through) to its customers certain refunds which it is entitled to receive from its suppliers. The amount at issue in Case No. 19901 is approximately $3,400, and the amount in Case No. 20523, in which the Light, Gas and Water Division of the City of Memphis, a customer of Texas Gas, has filed a brief as intervenor, is in excess of $1,000,000. At the suggestion of the court, the parties agreed to a consolidation of the two appeals, and it was stipulated that the controlling issues of law are identical.

The Natural Gas Act provides, in pertinent part:

Where increased rates or charges are thus made effective [temporarily, pending approval of the Commission], the Commission may, by order, require the natural-gas [pipeline] company to furnish a bond, to be approved by the Commission, to refund any amounts ordered by the Commission, to keep accurate accounts in detail of all amounts received by reason of such increase, specifying by whom and in whose behalf such amounts were paid, and, upon completion of the hearing and decision, to order such natural-gas company to refund, with interest, the portion of such increased rates or charges by its decision found not justified.

§ 4(e), 15 U.S.C. § 717c(e). For many years the Commission used this statutory authority merely to require gas producers to pass along refunds to their immediate customers, with no assurance that these economic benefits would be transmitted to the ultimate consumers of natural gas. In 1963, the Commission announced a change in this policy. Henceforward, it said, suppliers owing refunds because of the disallowance of rate increases should retain those funds pending the Commission's determination of whether they should be passed along further (*i. e.,* flowed through) to the supplier's jurisdictional customers (jurisdictional customers are those over which the FPC has jurisdiction). Hunt Oil Co., 30 F.P.C. 220, 222–23 (1963). The first major test of this policy was the Texas Eastern case, *see* 34 F.P.C. 1099 (1965), where the Commission's new policy was upheld in a case involving $10,000,000 in refunds. Texas Eastern Transmission Corp. v. FPC, 39 F.P.C. 630 (1968), aff'd, 414 F.2d 344 (5th Cir. 1969), cert. denied, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 89 (1970).

The general policy approved was that suppliers entitled to refunds must flow them through to their customers, whether or not the supplier had filed a tracking increase (*i. e.,* had raised its rates in response to the rise in its prices represented by the later-disallowed rate

increase). The Commission's rationale was this: if a tracking increase had been obtained, then the refund would be a windfall to the supplier unless flowed through to the customer whose rates had been increased. If the supplier had sought no tracking increase, then, presumably, it had been obtaining a fair rate of return even with the increased cost. Accordingly, if such a supplier should be permitted to retain the refund, it would also result in a windfall. The Commission admitted that it was powerless to compel refunds to ultimate consumers, but promised to allow state regulatory authorities which have such powers to submit suggestions for procedures for withholding refunds from suppliers until they could assure that they would be flowed through to ultimate consumers. Hunt Oil Co., 30 F.P.C. 220, 223 (1963).

In the case before us, petitioner Texas Gas does not challenge the policy upheld by the Fifth Circuit in *Texas Eastern,* and we may accept that decision as settled law. It is Texas Gas' contention that the *Texas Eastern* rule does not govern its cases, because of a settlement agreement reached by the Commission and Texas Gas in the fall of 1966.

Settlement agreements are one of the means by which the Commission exercises its authority to regulate the power industry. Such agreements bind both parties—the Commission and the regulated entity—and thus allow both to avoid the delays and uncertainties of litigation. This particular settlement agreement was entered when Texas Gas filed a formal "stipulation as to rates" with the Commission on September 23, 1966, and the Commission issued an order on November 8, 1966, accepting that stipulation. The Commission, in its order, described the subject matter of the agreement as follows:

Texas Gas Transmission Company (Texas Gas) on September 23, 1966, filed Stipulation as to Rates and tendered for filing certain revised tariff sheets to its FPC Gas Tariff. [Footnote omitted.] This filing is a result of conferences with the Commission Staff concerning levels of its jurisdictional rates and flow-through of liberalized depreciation, in accordance with the principle established in Alabama-Tennessee Natural Gas Co., 31 FPC 208, aff'd sub nom. Alabama-Tennessee Natural Gas Co. v. F.P.C., 359 F. 2d 318 (CA 5, 1966), cert. den. 385 U.S. [847, 87 S.Ct. 69, 17 L.Ed.2d 78] (October 10, 1966).

This filing reflects, primarily, a flow-through of the reduction in federal income taxes resulting from the utilization of the liberalized depreciation provisions of Section 167 of the Internal Revenue Code. It would make effective as of October 1, 1966, a decrease in Texas Gas' jurisdictional rates for both sales and transportation of gas for others aggregating approximately $4,238,000, based on sales and transportation for the twelve months ended September 30, 1966.

The stipulation tendered by Texas Gas, and accepted by the Commission, provided for flow-through by Texas Gas to all its jurisdictional customers of "any refund * * * received by Texas Gas from any of its supplying companies relating to gas purchased during the period commencing January 1, 1963 and ending September 30, 1966 under contracts which were *not* covered by the refund provisions of Article VIII of Texas Gas' statement of proposed settlement in Docket No. RP61–15". The stipulation did not, however, apply to all refunds received by Texas Gas from its suppliers after October 1, 1966. Rather, it applied only to those refunds which resulted from "reduction in * * * its future rates to be charged or collected for natural gas sold to Texas Gas below the rates which were in effect on October 1, 1966".

Both Texas Gas and the Commission agree that the refunds in question here did not fall into either of the two categories specifically treated in the stipulation. They occurred as a result of reductions in suppliers' rates after October 1, 1966. And they did not reduce

the price of gas below that which Texas Gas had to pay on that date. What had happened was that certain of Texas Gas' suppliers had sought to raise their rates above those of October 1, 1966. They had obtained temporary rate increases pending final Commission determination, and then the Commission disallowed the increases—reducing their rates precisely to the October 1, 1966 levels. Thus Texas Gas became entitled to the difference between the October 1, 1966 rates and those temporarily allowed, and the issue before us is whether the Commission's order, requiring Texas Gas to flow those refunds through to its customers, is barred by the 1966 settlement agreement.

It is not difficult to paraphrase the arguments that the parties make. The Commission says that since the settlement agreement is silent on the disposition of the refunds, then they may be subject to whatever the Commission may otherwise lawfully order. Texas Gas argues that the settlement agreement's silence indicates that no refunds other than those specified were to be—or could legally be—flowed through to customers.

In interpreting this kind of administrative contract, and determining what its silence on the instant matter indicates, we should look at the administrative background against which it was entered as well as at ordinary rules of contract interpretation. The settlement agreement was concluded during the fall of 1966. This was three years after the Commission had first announced its policy of requiring flow-throughs of refunds to jurisdictional customers. It was one year after the Commission had first acted on this policy in a major case, *Texas Eastern*, 34 F.P.C. 1099 (1965).

But *Texas Eastern* was not settled law in late 1966. The company involved was litigating that case vigorously in the Fifth Circuit, arguing that the Commission had exceeded its powers in ordering the refund. The Independent Natural Gas Association intervened on the side of Texas Eastern—an indication that

the natural gas industry generally was aware of the importance of the case and was attempting to have the policy of the Commission overruled.

From this perspective, we see the Commission's action in accepting the settlement agreement not as a relinquishment of its rights to require further refunds from Texas Gas in the event *Texas Eastern* was upheld. Rather, we see the Commission and Texas Gas acting as private parties often do in making stipulations or negotiating contracts: as narrowing areas of disagreement and settling immediate issues between themselves without litigation, leaving other issues to be resolved in another forum. The fact that the settlement agreement did not include a stipulation that the parties would abide by the result of the *Texas Eastern* litigation on the refunds not covered (such stipulations were included in similar agreements between the Commission and other pipeline companies, *e. g.*, Transwestern Pipeline Co., 38 F.P.C. 1010, 1011 (1967); El Paso Natural Gas Co., 37 F.P.C. 709 (1967)) indicates to us only that Texas Gas and the Commission each intended to retain the right to relitigate the *Texas Eastern* issue in the event its position was not accepted by the Fifth Circuit.

■ There is no denying that the Commission had the power to require the refunds here at issue, apart from the settlement agreement. Texas Gas does not argue otherwise. We hold that the Commission did not, in the settlement agreement, renounce this right, in light of the administrative background of this case. A contrary ruling would inhibit the power of the regulatory agency to perform the functions Congress intended it to perform and we will not interpret the settlement agreement as tying the hands of the Commission unless—as is not the case here—the language of that agreement compels the conclusion that that is what the parties clearly intended to accomplish. "[T]he overriding purpose of the Natural Gas Act [is] to protect consumers in their

purchase of gas to the end of keeping rates as low as possible. This purpose appears expressly in the Act, § 4(a), [footnote omitted] and in the Supreme Court decisions. [Citations omitted.]" Texas Eastern Transmission Co. v. FPC, 414 F.2d at 347. We decline to read into this settlement agreement at the behest of Texas Gas "things which are simply not expressed or not there", Texas Eastern Transmission Corp. v. FPC, 306 F.2d 345, 348 (5th Cir. 1962), when to do so would tend to frustrate the Commission's ability to carry out the mandate of Congress. *Cf.* Restatement of Contracts § 236(f) (1932).

■ Even if we were to ignore the administrative background, we would not reach a contrary conclusion. In contract law, silence is not generally taken as indicating an agreement between the parties unless the contract, taken as a whole, is an attempt to govern all relationships between them, or all relationships concerning an ascertainable subject matter. There is no indication that the contract here was so intended. In preface to its order accepting Texas Gas' stipulation, the Commission indicated that the refunds which were the subjects of the dispute and the settlement agreement resulted from adjustments of federal income tax liability. Though the language of the agreement was broader, including all refunds except those which would not bring the price below that obtaining on October 1, 1966, it did not cover refunds of the type here in question. Under these circumstances, the agreement's silence on the disposition of such refunds is not to be interpreted as an indication that the Commission waived all rights to require such refunds under its general policy of doing so. Our view is consistent with that of the Fifth Circuit which in the *Texas Eastern* case held that settlement agreements pertain only to those issues which they specifically resolve, and that they cannot be construed as having general application even to arguably analogous issues which the agreement does not purport to cover. 414 F.2d at 349.

■ Finally, Texas Gas argues that the flow-through policy the Commission seeks to enforce in this case would not have been validly promulgated without the procedural safeguards required by 5 U.S.C. § 553. This contention is without merit. Here the Commission announced a new policy in a fully adjudicated case, *Texas Eastern*. It is axiomatic in administrative law that such a policy, once announced, may serve as a precedent in other cases, where, as here, similar issues are present. SEC v. Chenery Corp., 332 U.S. 194, 201, 203, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947); *see also* Alabama-Tennessee Natural Gas Co. v. FPC, 359 F.2d 318, 343 (5th Cir. 1966), cert. denied, 385 U.S. 847, 87 S.Ct. 69, 17 L.Ed.2d 78 (1966).

The orders of the Federal Power Commission are affirmed.