**TEXAS EASTERN TRANSMISSION CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 71–3111.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1972.

J. Evans Attwell, Jack D. Head, Houston, Tex., for petitioner.

Michael H. Rosenbloom, Richard A. Solomon, Washington, D. C., for Public Service Comm. of N. Y.

Gordon Gooch, Gen. Counsel, Leo E. Forquer, Sol., J. Richard Tiano, First Asst. Sol., Joan E. Hiembigner, Atty., F. P. C., Washington, D. C., for respondent.

Thomas F. Brosnan, Washington, D. C., for Consolidated Gas Supply Co., East Ohio Gas Co., Peoples Natural Gas Co. and River Gas Co.

Edward W. Stern, Norman L. Holmes, Philadelphia, Pa., for Philadelphia Gas Works–UGI Corp.

Before JOHN R. BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

BELL, Circuit Judge:

This appeal presents a further development in the dispute between Texas Eastern and the Federal Power Commission over the disposition of refunds resulting from the disallowance by the Commission of rate increases collected during the period 1961–1964 from Texas Eastern by its suppliers.

The controversy first reached our court in Texas Eastern Transmission Corporation v. Federal Power Commission, 5 Cir., 1966, 357 F.2d 232, where, on grounds of prematurity, we dismissed petitions for review of Commission orders directing the suppliers to retain the refundable amounts until the question of entitlement as between Texas Eastern and its customers could be determined. Thereafter the question of entitlement was presented to the Commission. The claim of Texas Eastern to the refunds was rejected on the basis that its rate of return during the years in question was more than ample and that the refunds should be flowed through to the ultimate consumers of the gas. We affirmed the order of the Commission in this regard in Texas Eastern Transmission Corporation v. Federal Power Commission, 5 Cir., 1969, 414 F.2d 344.

We there noted that the Commission was possessed of statutory power to make such disposition of the funds in question and that the basic purpose of the Federal Power Act is to protect ultimate consumers of ·natural gas. 414 F.2d at 347.

We did point to the lack of authority in the Commission under the Natural Gas Act over the ultimate disposition of the refunds by the distributor purchasers from Texas Eastern. The rates of these distributors are regulated by the states and whether the ultimate consumers will receive the refunds is within the province of the state regulatory bodies. 414 F.2d at 350. See Federal Power Commission v. Interstate Natural Gas Company, 1949, 336 U.S. 577, 69 S.Ct. 775, 93 L.Ed. 895; Central States Electric Company v. City of Muscatine, 1945, 324 U.S. 138, 65 S.Ct. 565, 89 L.Ed. 801. The Commission pointed to this limitation on its jurisdiction but assumed that the state regulatory authorities would discharge their respective responsibilities to benefit consumers. Indeed, the regulatory authorities of California and New York had made clear their intentions to do so.

We also remarked in our opinion, and it is this remark which has given rise to this further appeal, that Texas Eastern might justly complain that its equities exceeded those of its distributor-purchasers in the event the refunds were retained by these purchasers instead of being flowed through to the consumers. We pointed out that it was necessary, under the Commission order, for further proceedings to ensue in the Commission to insure, to the extent possible, that the refunds would be flowed through to the consumers. 414 F.2d at 350.

Thereafter Texas Eastern filed a petition for rehearing in this court, contending that it was entitled to a hearing on the issue of its equities vis-a-vis the equities of its distributors in those instances where there was not to be a flow through to the consumers. We requested an answer from the Commission. The answer, in pertinent part, was as follows:

 " . . . the Commission directed the examiner to fashion an order for disposition of the refunds consistent with the Commission decision. Certainly that will enable the examiner to take into account recommendations from any state commission as to the procedure for the handling of the corpus pending a state decision as to the entitlement to refunds relating to sales within its jurisdiction . . . .

 "Of course, as the Court recognized, the Commission has no authority over the ultimate disposition of the refunds by the distributors. But a state commission may request in the further proceedings that no money should actually be passed on to any distributor until it has determined that such a

disposition would not prejudice its opportunity to benefit the ultimate consumers. For example, a state commission might recommend that the Power Commission should permit distributors to receive refunds only if they agree to abide by subsequent state commission orders as to the entitlement to such amounts. The type of procedure that may have to be accommodated may well vary from State to State depending on local laws. While we do not know the particular approach that may be required in each of the various States where consumers purchase gas delivered by Texas Eastern, it is this type of Federal-State cooperative approach that was envisioned by both the Commission's decision and the Court."

After denial of the petition for rehearing and upon remand, the examiner ordered that the refunds be paid to Texas Eastern and, in turn, within 30 days to its eighty-seven customers who were listed in an appendix to the order.[1] Some of its customers were subject to the jurisdiction of the Federal Power Commission, and they were ordered to pay over to their customers the refund amounts received from Texas Eastern.

The case went to the Commission, and essentially the same order was entered.[2] Commissioner Carver dissented on the ground there should be further proceedings as to the equity of Texas Eastern to the refunds in the case of all of its customers who refuse to agree in advance to flow-through the refunds to their customers. He noted that the rates giving rise to the refunds had been paid by Texas Eastern rather than Texas Eastern having filed its own "tracking" increase.[3]

The long and short of this appeal is that we previously affirmed the holding of the Commission that Texas Eastern was not entitled to the refunds. We did this with full notice that the Federal Power Commission could not guarantee

---

1. Some of the ultimate distributor-purchasers are municipalities where flow through to consumers would be inevitable. Others are large distributors who have represented that they intend to flow the refunds to their consumers. The New York Public Service Commission has represented that it intends to require its distributors to apply the refunds to the benefit of consumers. According to the record, only the East Ohio Company, a distributor regulated by the Public Utilities Commission of the State of Ohio, intends to claim the refunds in an effort to recapture past deficiencies in earnings. The record is not complete in this regard and there may be other distributors who will seek authority for the state regulatory authorities to retain the refunds.

2. Although not a matter presented in this review proceeding, the Commission did consider a suggestion of the New York Public Service Commission for facilitating the delivery of the refunds to consumers. This appears from the following passage of the Commission opinion:

"New York proposes that the Commission inform the concerned state regulatory commissions of its intention to order release of the refundable amounts at issue here. The state agencies would be requested to advise the Commission within a reasonable period whether in their opinion the immediate refund to the first nonjurisdictional entity might inhibit them from resolving any possible controversy as to the ultimate disposition. In the event the Commission is not so notified, it would be assumed that no state regulatory purpose would be achieved by delay in ordering the flow-through of refunds to the first nonjurisdictional entity. If, on the other hand, such notification is made the Commission would order the portion of the refundable amounts in question be retained either by the producer or Texas Eastern until the necessary determination at the state level is made.

"We agree with the Examiner that a further waiting period is not necessary in this protracted case. Interested state commissions will receive copies of this order, and we are confident that they will carry out what measures they consider appropriate and necessary to protect ultimate consumers within the ambit of state law."

3. The failure of Texas Eastern to track was its own choice. We commented on this subject in the prior opinion. 414 F.2d at 348.

the flow-through of the refunds to consumers but would have to rely on state regulatory commissions. We said: "The Commission could not guarantee benefits for the ultimate consumer but absent its new policy [of placing the refunds within the jurisdiction of the state regulatory authorities] there would be no way to benefit the ultimate consumers." We do not recede from our previous holding.

■■ The regulatory scheme is that the states and federal government together occupy the area of consumer protection in the field of natural gas supply and rates. We cannot say that the Commission should have gone further to impress the refunds with a trust conditioned on the ultimate flow-through to consumers or that some representation or agreement should have been obtained to this effect from the state regulatory authorities or from the customers of Texas Eastern. On the other hand, it would appear that the Commission order is well within the principles of federalism. The fate of the consumer is left in the hands of the state authorities, and the Commission has gone as far as it can go under the Act to make the funds available to the consumers. Such inequity as may exist, if we assume that some portion of the refunds may not reach the consumers but may remain in the hands of distributors who purchased from Texas Eastern and who are not subject to the jurisdiction of the Federal Power Commission, is inherent in the scheme of regulation. We hasten to say that we do not forecast that the benefit of the refunds will not reach the ultimate consumer; we simply point out that such a possibility exists.

In sum, Texas Eastern lost its case when it failed to prevail on the original question of entitlement. Once that point was reached, it became the duty of the Commission to take additional action to complete its part of the flow-through process. We cannot say that the order in question is not a proper response to this duty. Thus, such equity as Texas Eastern has against those distributors, if any, who may ultimately retain portions of the refunds, is lost to the overriding purpose of making the refunds available for possible delivery under the regulatory scheme to consumers.

✦ ■ In Federal Power Commission v. Hope Natural Gas Company, 1944, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333, the court stated that the primary aim of the Natural Gas Act was to occupy the area where state regulatory authorities could not act so as to protect consumers against exploitation. It was not designed to take authority from the state regulatory agencies but to complement their authority. 320 U.S. at 610, 64 S. Ct. 281. The decisions in Federal Power Commission v. Interstate Natural Gas Company; and Central States Electric Company v. Muscatine, both supra, although involving court disposition of court-impounded refunds through the use of equity powers, emphasize the legislative fact that state authorities retain control of rates and refunds charged and made in respect of intrastate sales.

■ We have carefully considered the settlement offer argument made by Texas Eastern, and we find no error in the rejection of the offer by the Commission. The entitlement of Texas Eastern to the refunds had already been decided, and it was well within the Commission's discretion to deny the proposal that the refunds be handed over to Texas Eastern for the development of new gas reserves in line with the concepts developed by the Commission in later refund cases. See Southern Louisiana Area Rate Case (Placid Oil Company) v. Federal Power Commission, No. 71–2761, now pending in this court.

Affirmed.