KENTUCKY WEST VIRGINIA GAS COMPANY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

No. 82–4594.

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1986.

Jerome M. Feit, Sol. F.E.R.C., Washington, D.C., Joshua Z. Rokach, Leslie J. Lawner, argued, for Federal Energy Regulatory Comn.

James D. McKinney, Jr., argued, Ross, Marsh & Foster, Washington, D.C., for Kentucky West Virginia Gas Co.

William R. Mapes, Jr., Richard E. Hitt, Acting Gen. Counsel, Charleston, W.Va., for Public Service Comm. of West Virginia.

Richard A. Solomon, David D'Alessandro, argued, Washington, D.C., for Com. of Kentucky Public Service Comn.

Before GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Kentucky West Virginia Gas Company petitions for review of orders issued by the Federal Energy Regulatory Commission (FERC). These orders prohibited it from pricing part of its company-owned production in accordance with the rate structure set forth in the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. §§ 3301–3432. Applying the principles declared in *Mid Louisiana Gas Co. v. F.E.R.C.*, 780 F.2d 1238 (5th Cir.1986), we hold that Kentucky West is not contractually barred from recovering NGPA prices. The orders of the commission are thus reversed.

## I

### A

We have this day decided a case involving facts and issues quite similar to those presented here. *See Mid Louisiana Gas Co. v. F.E.R.C.*, 780 F.2d 1238 (5th Cir.1986) (*"Mid-La. III"*). The Commission orders under review in both cases stem from the enactment of the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432, and this court's mandate in *Mid-Louisiana Gas Co. v. F.E.R.C.*, 664 F.2d 530 (5th Cir.1981) (*"Mid-La. I"*), *aff'd in part, vacated in part sub nom. Public Serv. Comm'n of New York v. Mid-Louisiana Gas Co.*, 463 U.S. 319, 103 S.Ct. 3024, 77 L.Ed.2d 668 (1983) (*"Mid-La. II"*). The regulatory background giving rise to this controversy is summarized in Part IA of *Mid-La. III*. *See Mid-La. III*, 780 F.2d at 1239. We discuss here those additional facts, peculiar to Kentucky West's petition, that are relevant to the resolution of this appeal.

### B

Kentucky West is an interstate natural gas pipeline. Over ninety percent of the

gas it sells is produced by Kentucky West itself or its affiliates. The pricing of this pipeline, or company-owned, production is at issue here.

On April 29, 1976, Kentucky West filed for a general rate increase under section 4 of the Natural Gas Act (NGA), 15 U.S.C. § 717c.[1] In February 1977, the pipeline entered into a "Stipulation and Agreement in Settlement of Certain Rate Issues," Docket No. RP76–93, with a number of its jurisdictional customers. The Commission approved this "partial" settlement, which priced the pipeline's "old" production on a cost-of-service basis. The agreement stated that "the parties were able to agree on all aspects of the cost of service and rate design of this proceeding except for the issue of rate of return and the income tax related thereto," which issues were reserved for further proceedings. The settlement, which terminated on May 1, 1980, also contained the following reservations clause:

> It is specifically understood and agreed that this Stipulation and Agreement represents a negotiated dollar settlement in the public interest with respect to Kentucky West rates; and neither Kentucky West, the Commission, the Commission Staff, nor any other person, shall be deemed to have approved, accepted, agreed or consented to any rate-making principle or any method of cost of service determination, cost allocation or rate design underlying or purported to underlie any of the rates or refunds provided for herein; and neither Kentucky West, the Commission, the Commission Staff, nor any other affected person, is to be prejudiced or bound thereby in any further proceeding or proceedings.

Prior to the December 1, 1978 effective date of the relevant provisions of the NGPA, Kentucky West filed an amendment to the Purchased Gas Adjustment (PGA) clause in its base tariff to allow the tariff to be adjusted to "reflect changes in ... cost of purchased gas ... the cost allowance for which is governed ... by law." *See* 18 C.F.R. § 154.38.[2] FERC approved this amendment. On March 30, 1979, the pipeline made a PGA filing, PGA 79–1, seeking to increase its jurisdictional rates through its tariff PGA clause to reflect NGPA prices for both its "old" and "new" production for the period between December 1, 1978 through October 31, 1979. On April 30, 1979, FERC rejected Kentucky West's proposed tariff insofar as it applied NGPA prices to its "old" production. Though FERC based its rejection on its interim NGPA-implementing regulations,[3] it stated:

> [S]hould the Commission determine in its final NGPA regulation (on rehearing) that the repricing of the "old production," as proposed by Kentucky West, was appropriate, the Commission shall permit Kentucky West at a future date to recover the revenues lost as a result of the action taken in this letter order with respect to that "old production."

Kentucky West revised its tariff sheet to price its "old" gas on a cost-of-service basis, stating that the revision was under protest and without prejudice to the company's right to substitute another tariff sheet upon resolution of the pipeline production pricing controversy. Though all of Kentucky West's subsequent PGA filings priced its "old" gas on a cost-of-service basis, similar language of reservation was included in all accompanying transmittal letters. FERC, on December 18, 1980, denied Kentucky West's request for rehearing, reasoning that binding Commission regulations had resolved the pricing issue.

---

1. *See Mid-La. III,* 780 F.2d at 1239, for a discussion of the pre-NGPA pricing scheme for a pipeline's "old" and "new" production.

2. *See Mid-La. III,* 780 F.2d at 1239, for a discussion of the PGA mechanism.

3. In 1979, FERC denied a stay of these interim regulations, which disallowed NGPA pricing for pipeline production. In denying the stay, the Commission stated: "In the event a court determines that this regulation is unlawful, this Commission could authorize the collection of revenues denied by this provision through surcharges."

On October 29, 1979, Kentucky West filed for another section 4 general rate increase, Docket No. RP 80–7, with a proposed effective date of May 1, 1980 (the expiration of the 1977 settlement). This filing priced "old" production on a cost-of-service basis. In its transmittal letter, however, the pipeline stated that it did not "intend to waive or prejudice its right to continue to prosecute its appeal" of FERC's pipeline production regulations then under judicial review. On October 30, 1980, FERC approved the "Stipulation and Agreement in Settlement of [RP 80–7] Rate Proceedings" "concerning the settlement of all issues respecting Kentucky West's rates commencing May 1, 1980, and for the period November 1, 1979 through April 30, 1980." This settlement priced Kentucky West's "old" gas at its cost-of-service. It also contained a "Gereral Reservations" clause virtually identical to that in the 1977 agreement. In its letter approving the settlement, FERC stated:

> This order is without prejudice to any findings which have been made or which may hereafter be made by the Commission, and is without prejudice to any claims or contentions which may be made by the Commission, the Staff, or any other party or person affected by this order in any proceeding now pending or hereafter instituted by or against Kentucky West or any other person or party.

On March 2, 1982, this court, in *Mid-La. I*, declared that the NGPA is applicable to most gas produced by pipeline companies. Kentucky West was one of the pipelines that had vigorously sought this decision. On March 31, 1982, our holding in hand, Kentucky West made a PGA filing seeking to recover NGPA prices for its "old" gas for the period from December 1, 1978, the effective date of the NGPA, to January 31, 1982. The pipeline proposed to charge these rates to a deferred purchased gas account, *see* 18 C.F.R. § 154.38(d)(4)(iv)(b), and to collect them by way of a surcharge. On April 30, 1982, FERC suspended for five months the effective date of Kentucky West's proposed increase, explaining that the Commission needed additional time to assess *Mid-La. I*. Kentucky West filed for rehearing.

FERC, on December 2, 1982, responded by issuing an "Order on Rehearing Disposing of Pipeline Production Issue." This order allowed Kentucky West to recover its *Mid-La. I* costs for "old" production associated with its March 30, 1979 PGA filing (for the period December 1, 1978 through October 31, 1979). The Commission explained that it was permitting this recovery because of the promise in its April 30, 1979 letter order and because the NGPA "allowed pipelines, on a one time basis, to reflect in the pipeline's first 1979 purchased gas cost estimates of increased gas costs due to the NGPA for the period up to the effective date of the pipeline's first 1979 PGA."

The Commission, however, denied similar NGPA recovery for "old" production after November 1, 1979. FERC reasoned that Kentucky West had not preserved its right to reprice its old production merely by including non-waiver language in its PGA filings and transmittal letters. Moreover, in its 1977 and 1980 settlement agreements, the pipeline had priced its "old" gas on a cost-of-service basis and did not specifically preserve the right to reprice this gas. The Commission concluded that Kentucky West "must be deemed to have negotiated away the right to reprice its old production for the term of the settlement agreement."[4] Kentucky West has petitioned this court for review of the Commission's December 2 order.[5]

---

4. The Commission further found that the settlement was still in effect because the agreement purported to remain in force until either Kentucky West filed for a section 4 increase in its base rate tariff or a section 5 Commission-initiated rate change became effective, neither of which had yet occurred.

5. The pipeline also filed an application for rehearing and request for a stay with FERC. Both were denied. Appellate proceedings were twice held in abeyance, once pending the Supreme Court's decision in *Mid-La. II* and again pending FERC promulgation of regulations pursuant to the Supreme Court mandate. The Commission promulgated such regulations, but

## II

As in *Mid-La. III,* the Commission does not here dispute that Kentucky West has a statutory right to reprice its "old" pipeline production in accordance with NGPA rates. *Cf. Mid-La. III,* 780 F.2d at 1242. Instead, FERC rests its argument on the language of the 1977 and 1980 settlements, contending that these agreements preclude the pipeline from repricing its "old" gas pursuant to the NGPA. FERC maintains that the Commission has consistently held parties to the terms of their approved settlements and prevented later modification unless specifically provided for in the settlement itself. FERC argues that given Kentucky West's failure to reserve the right to reprice its "old" gas in its rate settlements, both of which priced that gas on a cost-of-service basis, the pipeline "must be deemed to have given up" its right to reprice its "old" production.

Kentucky West counters with many of the same arguments made by the pipeline company in *Mid-La. III.* Kentucky West claims that it expressly reserved the right to reprice its old pipeline production at NGPA prices. It points to the "General Reservations" language in the settlements, arguing that that clause indicates that the pipeline was computing its base tariff on a cost-of-service basis on the express condition that the pipeline could take advantage of any favorable outcome in the *Mid-La. I* litigation. The reservations clause provides that Kentucky West was not "to be prejudiced or bound" by any "rate making

principle or any method of cost of service determination, cost allocation or rate design" underlying the rates "in any future proceeding or proceedings." The pipeline contends that this language clearly applied to other PGA proceedings, the proper and exclusive forum for addressing increases in purchased gas costs attributable to the NGPA.[6]

FERC responds that the "General Reservations" clause did not expressly preserve Kentucky West's right to reprice its "old" production because that clause stipulated that the agreement represented a "negotiated dollar settlement" that formed the basis for the rates Kentucky West charged its customers. To reprice "old" gas, it argues, would modify this dollar amount and contravene the express terms of the settlement contract.

■ We are not persuaded that the language in the "General Reservations" clause expressly preserved Kentucky West's right to take advantage of a favorable result in *Mid-La. I.* That language covers only "method[s] of cost of service determination" in future collateral proceedings. We do not find it sufficient to constitute a specific reservation of the pipeline's *Mid-La. I* rights.

■ Nevertheless, we cannot agree with the Commission that by reaching a "negotiated dollar settlement," Kentucky West should be "deemed" to have bargained away that very valuable claim. As with

expressly stated that the orders here under review were unaffected by the new regulations.

**6.** Kentucky West argues on appeal that the FERC orders ignored the regulatory fact that increases in purchased gas costs must be made in PGA filings, *see* 18 C.F.R. § 154.38(d)(4), not section 4 general rate increase proceedings like those in Docket Nos. RP 76–97 and RP 80–7. *See id.* § 154.38(d)(4)(ix)(b). Thus, settlements in those proceedings did not and could not address PGA increases resulting from the NGPA. It acted properly and preserved its right to recapture NGPA prices, the pipeline argues, by seeking, in PGA filings made after the NGPA and the *Mid-La.* decisions, to reprice its old gas. Such action was authorized, it continues, by the PGA clause in its base tariff on file with FERC.

FERC responds that a PGA filing cannot override final rates established by the Commission in a section 4 rate case because all gas costs passed through a PGA clause are subject to final resolution in an NGA rate proceeding. *See* 18 C.F.R. § 154.38(d)(4)(vi). *See also Associated Gas Distributors v. F.E.R.C.,* 706 F.2d 344, 346 (D.C.Cir.1983) (in return for expedition of rate increase, pipeline must agree to submit all its costs and revenues for a full section 4 review at least once every three years).

Because we hold that the settlements did not preclude Kentucky West from repricing its pipeline production, we need not reach the arguments regarding the "exclusivity" of the PGA option and its relation to section 4 proceedings.

the settlement agreement in *Mid-La. III* we find that the Kentucky West settlements are silent on the issue of repricing old pipeline production. *Cf. Mid-La. III*, 780 F.2d at 1244. The purpose of these settlements, as well as the attending administrative background and circumstances, *see Mid-La. III*, 780 F.2d at 1244; *Pennzoil Co. v. F.E.R.C.*, 645 F.2d 360, 388 (5th Cir.1981), *cert denied*, 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982); *Mobil Oil Corp. v. F.P.C.*, 570 F.2d 1021, 1025 (D.C.Cir.1978); *Mitchell Energy Corp. v. F.P.C.*, 519 F.2d 36, 41 (5th Cir.1975), lead us to conclude that the agreements at issue here simply settled narrow issues concerning the computation of Kentucky West's base rates, "leaving other issues to be resolved in another forum." *Mid-La. III*, 780 F.2d at 1245, (quoting *Texas Gas Transmission Corp. v. F.P.C.*, 441 F.2d 1392, 1395 (6th Cir.1971)); *see also Texas Eastern Transmission Corp. v. F.P.C.*, 414 F.2d 344, 349 (5th Cir. 1969), *cert denied*, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 89 (1970). In the circumstances of this case, we cannot infer a waiver of valuable statutory rights from silence alone.

When Kentucky West negotiated its 1977 settlement, the NGPA was not yet in effect. It is specious to argue, as the Commission does today, that the pipeline should be "deemed" to have bargained away its right to collect NGPA rates because at the time of the 1977 settlement it was "abundantly clear" that Congress was about to alter the natural gas pricing scheme. Furthermore, despite the legal uncertainty concerning a pipeline's repricing rights at the time of the 1980 settlement, Kentucky West, in basing its settlement rates on its cost-of-service, was simply adhering to Commission regulations that were binding at that time. *Cf. Mid-La. III*, 780 F.2d at 1244. The proper treatment of pipeline production thus was not an issue subject to negotiation in fixing the base tariff rates.

Neither of the settlements purports to resolve all issues then pending between the parties. *Cf. Mobil Oil*, 570 F.2d at 1025; *Texas Gas Transmission*, 441 F.2d at 1396. The 1977 settlement "dispose[d] of all the issues in the above captioned proceeding exclusive of the issue of rate of return and related income tax." The 1980 agreement concerned "the settlement of all issues respecting Kentucky West's rates." Neither agreement expressly sought to resolve cost-of-service or PGA issues.[7] Nothing in the settlements indicates that they concerned anything more than the proper dollar figures for cost components used in computing Kentucky West's jurisdictional cost-of-service. The Commission, indeed, admits that except for one oblique "reference to Kentucky West's cost-of-service gas.... [T]here was absolutely no language in the [1980] settlement bearing on Kentucky West's right to reprice this old gas." Nor is there any provision in the settlement overriding Kentucky West's PGA tariff, which allowed recovery of all gas cost increases authorized "by law." We refuse to hold that the settling parties intended to resolve unmentioned issues in the settlements.

The money involved in this appeal also suggest that Kentucky West did not intend to relinquish its valuable statutory rights. The pipeline informs us that its right to recoup NGPA rates from 1978 is worth more than $60 million. In stark contrast, the 1980 settlement concerned an increase in jurisdictional revenues of but $5 million. This difference supports our conclusion that the NGPA pricing issue was never meant to be a part of the settlement. That issue was consigned for resolution to another forum, in which Kentucky West was vigorously participating and of which the

---

**7.** In this respect, Kentucky West's settlements are distinguishable from those at issue in *Consolidated Gas Supply Corp. v. F.E.R.C.*, 745 F.2d 281 (4th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), a case heavily relied upon by the Commission. Nor did the texts of these settlements indicate, as did those in *Consolidated, see id.* at 289 & n. 18, that Kentucky West suspected that a specific reservation as to pipeline production pricing needed to be lodged in the section 4 settlements. *See Mid-La. III*, 780 F.2d at 1245 for a discussion of *Consolidated*. As in *Mid-La. III*, we find the settlements here far less "integrated" than those in *Consolidated* and thus conclude that *Consolidated* is inapposite. *See Mid-La. III*, 780 F.2d at 1246.

Commission and the pipeline's customers were only too well aware. *Cf. Mid-La. III,* 780 F.2d at 1245.

The parties' course of conduct also indicates that they intended the pipeline production issue to be resolved elsewhere. In its letter transmitting the rate filing in Docket No RP80–7, Kentucky West specifically stated that it did not intend to waive or prejudice its rights in the pending appeal of the Commission's pipeline production pricing regulations. In transmitting all its post-NGPA filings, filings in which the Commission required that cost-of-service calculations be used, Kentucky West carefully preserved its right to refile upon resolution of *Mid-La. I.* This bolsters Kentucky West's contention that it believed a PGA filing, rather than a collateral rate settlement, was the exclusive method for recovering NGPA rates.[8]

Nor does the Commission's own conduct lead to a contrary conclusion. In denying a stay of its interim regulations pricing pipeline production on a cost-of-service basis, FERC assured pipelines that they could at least attempt to recoup NGPA rates "[i]n the event a court determines that this regulation is unlawful."[9] Moreover, "the irrationality of the Commission's construction of the settlement is demonstrated by the inconsistency in its orders." *Mobil Oil,* 570 F.2d at 1025. In its December 2, 1982 order, FERC allowed the pipeline to recover its *Mid-La. I* costs for old production for the period from December 1, 1978 through October 31, 1979. At the same time, FERC

denied similar recovery for identical production after November 1, 1979. Once approved, however, a settlement binds the Commission as well as the regulated entity. *Texas Gas Transmission,* 441 F.2d at 1394. If, as the Commission contended, Kentucky West had settled the pipeline production pricing issue with its customers, the pipeline should have been contractually barred from recovering NGPA rates for both periods, FERC "promises" notwithstanding.[10]

Thus, the conduct of the settlement parties themselves reinforces our conclusion that the settlements were silent on the issue of pricing pipeline production. *Cf. Mid-La. III,* 780 F.2d at 1245. We will not construe the pipeline's silence as an agreement to relinquish its statutory rights, which were ultimately confirmed in *Mid-La. I* and *Mid-La. II. See Mid-La. III,* at 780 F.2d 1245; *Mobil Oil,* 570 F.2d 1025; *Texas Gas Transmission,* 441 F.2d at 1396. Neither the 1977 nor the 1980 settlements barred Kentucky West from recovering the applicable NGPA rate for its "old" company-owned production. The Commission erred in denying such recovery for the period after November 1, 1979.[11]

### III

In view of our holding that the Commission erroneously construed the pipeline's settlement agreements, we need not reach Kentucky West's contention that the Commission lacked authority under the NGPA to construe those agreements. We RE-

---

8. *See supra* note 6.

9. *See supra* note 3.

10. Intervenor Public Service Commission of Kentucky also apparently finds FERC's conduct inconsistent. The intervenor suggests that FERC's April 30 letter order may have been "erroneous in stating that [Kentucky West] would be entitled to increase the settlement rates in the absence of a general rate increase filing."

11. At oral argument, FERC suggested that Kentucky West could not recover such rates through a PGA filing. The only appropriate method, it claimed, is through a general section 4 proceeding to reduce the pipeline's base tariff to reflect the removal of costs-of-service attributable to

pipeline production. Kentucky West claims that the Commission, in rejecting its PGA filings, never indicated that such filings were an inappropriate mechanism to recover NGPA rates. Moreover, the pipeline argues, its rejected 1982 PGA filing sought to implement *Mid-La. I* through a rate adjustment that reflected NGPA rates for its old production *and* that "remove[d] that portion of Kentucky West's base tariff rates by subtracting the unit value of costs-of-service production" associated with its old gas.

We need not resolve this question, as the Commission concedes that the only obstacle to Kentucky West's exercising its statutory right to recoup NGPA rates is the settlement contracts themselves.

VERSE the orders of the Commission denying Kentucky West the right to collect NGPA rates for its pipeline production for the period after November 1, 1979, and REMAND to the Commission for proceedings consistent with this opinion.